# SUPERIOR COURT.

## HENRI JACQUIN, Collector, &c., agt. JOSEPH P. BUISSON.

In an action, by an heir at law of a deceased partner, for a dissolution of the co-partnership, an account, an injunction, and a receiver, where the articles of co-partnership, or association, were executed at Brussells, on the 8th April, 1853, in the French language, establishing a limited commercial partnership, for ten years, designated a collective partnership—(*en nom collectif*)—the location to be in the city of New-York, a defence was interposed, by the surviving partner, that, under the articles of association, the partnership must remain in force for the unexpired period fixed for its duration.

*Held*, that the rights and position of the parties were to be examined, and should be considered as affected, both by our own law and by the law of France, which applied to the contract, if any foreign law did so apply.

The *tenth article* of the association was as follows: "The decease of M. Jacquin shall operate no dissolution of the co-partnership, and shall open no necessity for laying on the public seals, at the business place, nor of an inventory. His heirs and representatives will be considered as having succeeded him from the last inventory that may have preceded his demise; and they shall have three months, to date from such decease, for declaring whether they intend continuing the partnership upon the same basis, or transforming it into a partnership *en commandite*."

"If they declare their intentions to be to transform the partnership, or, within the time allowed them, they neglect making known their intentions, the partnership shall of full right be transformed into such a partnership *en commandite* in regard to them. Mr. Buisson shall thenceforth be the sole responsible manager, and it shall then continue upon the new basis, without any other modification, up to the time fixed for its expiration."

It appeared that the partner Jacquin died in January, 1855, intestate, leaving a widow and three children, of whom the plaintiff was one. There had never been any announcement, directly made by the heirs and representatives, of their election to proceed with the partnership *en nom collectif*, or as general partners. But the facts authorized the supposition of the concern proceeding upon the other basis, viz., *en commandite*. Applying the law to such a case,

*Held*, 1st. That no representative of an estate, or parties interested in it, can be bound to become partners with a survivor, so as to make themselves personally responsible, or subject them to the duties of partners, without their consent. No articles of covenant or direction in a will can impose this personal obligation upon them.

2d. But the party may, by articles or his will, direct the whole of his estate to remain in the firm, and be liable to the debts incurred in the business carried

Jacquin agt. Buisson.

on subsequent to his death. He must demonstrate such an intention in the most positive and unequivocal manner.

3d. A direction that the capital already in, or a. given amount of it, should remain in the firm during a stated period, gives the acting partner the possession of the fund, and the right to use it. He can only be interfered with on grounds which will justify every partner to break up a partnership, before the expiration of its limited continuance.

When, therefore, a stipulation is in favor of a particular party, or of a representative, he may refuse to act upon it, and the firm is *dissolved*. If there is a covenant, or a testamentary direction for the continuance or investment of capital, it will *bind the estate*. If the party avail himself of the stipulation, he will become *personally* bound; but otherwise the estate or fund will alone remain liable.

The partnership, *en commandite*, of the modern civil law, has, as its leading and distinguishing elements, the exemption of the contributors to any personal responsibility for the debts; the subjection solely of the fund contributed by each to such liability; the general unlimited responsibility of the actor, (Le Gerant,) and the omission of any necessity to disclose the names of the contributors, (although the amount is published,) except in case of a failure; and then only to reach the amount of their investment.

The provision in the articles of partnership in this case, is perfectly lawful by the law of the country where the contract was made; and under it the widow and heirs continued partners, *en commandite*.

But it is not to be questioned that a limited partnership, formed under our statute, is dissolved by the death of one of the partners, as it is in ordinary cases; that is, so far as the statute regulates it.

A striking distinction between the principle of our statute and that of the French law is, that by the former the names of the special partners must appear upon the public record.

Our statute has prescribed a system which will extend to provisions of this nature. The parties designated in articles or a will, to continue a partnership, or to be interested in it, after a death, should be obliged to renew the formalities of the statute, if they would remain special partners, with the fund alone responsible; and if they continue the business without this form, then they become general partners, liable in like manner as all other dormant partners.

The result in this case is, that there was a general partnership, which the representatives have not chosen to continue as such, and now seek to continue as a limited partnership, without pursuing the regulations of the statute. It follows that a dissolution has taken place by the death of Jacquin.

The survivor has then a right to wind up the business, and can only be interfered with on the ground of unfaithfulness or insolvency.

*At Chambers, New-York, September,* 1855.
APPLICATION for an injunction and receiver.

Jacquin agt. Buisson.

MR. SOUTHMAYD, *for plaintiff*.
MR. DYKERS, *for defendant*.

HOFFMAN, Justice.    The plaintiff sues as collector (administrator *ad colligendum*) of Joseph Julien Jacquin, who, in his lifetime, was a partner with the defendant, Buisson.    He sets forth the formation of the partnership; the death of Jacquin, who was his father; the consequent dissolution; and seeks an account, an injunction, and receiver.    Some other matters are stated in the complaint, which will be hereafter noticed.

The defendant resists the application, and the whole relief sought in the action, upon the ground that, under the articles of association, the partnership must remain in force for a number of years—the unexpired period fixed for its duration.

The articles were executed at Brussells, on the 8th of April, 1853, in the French language; and the first article established a commercial partnership between the parties, the location of which was to be in New-York, and the object, the making and selling of liquors and sugar-plums.    It was expressly designated a collective partnership—(*en nom collectif;*) and its duration is fixed for ten years from its institution.

The tenth article is as follows:—

" The decease of M. Jacquin shall operate no dissolution of the co-partnership, and shall open no necessity for laying on the public seals, at the business place, nor of an inventory. His heirs and representatives will be considered as having succeeded him from the last inventory that may have preceded his demise; and they shall have three months, to date from such decease, for declaring whether they intend continuing the partnership upon the same basis, or transforming it into a partnership *en commandite*.

" If they declare their intentions to be to transform the partnership, or, within the time allowed them, they neglect making known their intentions, the partnership shall, of full right, be transformed into such a partnership, *en commandite*, in regard to them.  Mr. Buisson shall thenceforth be the sole responsible

Jacquin agt. Buisson.

manager, and it shall then continue upon the new basis, without any other modification, up to the time fixed for its expiration."

The partner, Jacquin, died in January, 1855, intestate, leaving a widow and three children, of whom the plaintiff is one. These are stated to be his heirs and next of kin.

There has never been any announcement, directly made by the heirs and representatives, of their election to proceed with the partnership *en nom collectif*, or as general partners. I consider the acts stated in the affidavit of the defendant wholly insufficient to bind them to this extent. They are consistent with the wish, or the supposition of the concern proceeding upon the other basis, viz., *en commandite*.

The rights and position of the parties are then to be examined upon this footing; and should be considered as affected both by our own law and by the law of France, which, it is assumed, applies to the contract, if any foreign law does so apply.

I. I have examined the leading authorities upon this subject, particularly *Wrexham* agt. *Huddleston*, (1 *Swanston*, 514 n.,) *Ex parte Garland*, (10 *Vesey*, 110,) *Ex parte Richardson*, (3 *Mad. Rep.* 138;) *Barwell* agt. *Mandeville*, (2 *Howard's S. C. Rep.* 560;) and *Davis* agt. *Collins*, (6 *Hare*, 418.) The following rules may, I think, be deduced from them.

1st. That no representatives of an estate, or parties interested in it, can be bound to become partners with a survivor, so as to make themselves personally responsible, or subject them to the duties of partners, without their consent. No articles of covenant, or direction in a will, can impose this personal obligation upon them. (*See also Madgwick* agt. *Wimple*, 6 *Beavan*, 495, *and The Louisiana Bank* agt. *Kenner*, 1 *Miller's Louisiana*, 384—a leading case.*)

The case of *Kershaw* agt. *Mathews*, (2 *Russell*, 62,) shows, that where there is merely a stipulation giving a right of succession, if the party named, or the executors, refuse to come in, the partnership is dissolved.

2d. But the partner may, by articles, or his will, direct the

whole of his estate to remain in the firm, and to be liable to the debts incurred in the business carried on subsequent to his death. He must demonstrate such an intention in the most positive and unequivocal manner. Even in such a case, *Davis* agt. *Collins* appears to prove, that upon the executor refusing to go on, or to contribute capital as directed, an action for damages for the breach of the obligation imposed upon him, would be the proper remedy; not any interference of a court of equity.

3d. Again, a direction that the capital already in, or a given amount of it, should remain in the firm during a stated period, presents the more common, and the simplest case. The acting partner has then possession of the fund, and the right to use it. He can only be interfered with on grounds which will justify every partner to break up a partnership, before the expiration of the time limited for its continuance.

4th. Now in such a case, Justice STORY, in delivering the opinion of the court in *Barwell* agt. *Mandeville*, expressly states, "that third persons, having notice of the death, are bound to inquire how far the agreement or authority to continue it extends, and what funds it binds; that the creditors can resort to that fund or amount alone, and not to the general assets of the testator's estate, although the partner, or executor, or other person carrying on the trade, may be personally responsible for all the debts contracted."

Thus, then, when the stipulation is in favor of a particular party, or of a representative, he may refuse to act upon it, and the firm is dissolved. If there is a covenant, or a testamentary direction for the continuance or investment of capital, it will bind the estate. If the party avail himself of the stipulation, he will become personally bound; but otherwise the estate or fund will alone remain liable.

It follows that, by the *general* and English law, in a case of this simple character, where a capital is ordered to remain in a firm after a dissolution by death, the great object of a limited partnership is attained. Subsequent creditors can resort only

to the fund.  If no representative agrees to engage in the business, there can be no personal liability.

II.  I proceed to consider the French law, as applicable to this contract.  I have before observed, that there is not sufficient proof to show an election by the representatives, to become general partners.  The relation of the parties is then that prescribed in the alternative clause of the tenth article.

The partnership *en commandite* of the modern civil law has, as its leading and distinguishing elements, the exemption of the contributors to any personal responsibility for the debts; the subjection solely of the fund contributed by each to such liability; the general unlimited responsibility of the actor, (*Le Gerant,*) and the omission of any necessity to disclose the names of the contributors, (although the amount is published,) except in case of failure, and then only to reach the amount of their investment.  Until this event, no action will lie against them for the engagements of the actor.  The management is left solely to him, and any voluntary interference renders the party a general partner. (*Art.* 23, *Code de Commerce; Pardessus Droit Commercial, vol.* 4; *Troplong Du Contrat De Societe, Ar.* 377, 402, 408.)

Such an association, unknown to the English law, appears to have been a favorite commercial combination among the nations of southern Europe during the middle ages.  " It sustained," says a French writer, " the navigation of the Mediterranean.  It led to the voyages of the mariners of Languedoc, of Provence, and of active Italy.  It carried merchants to the east in " the train of the crusaders; and it enabled the Lombards to rear the superb palaces of Florence and Pisa; it came to the aid of capitalists, whether among the nobles or the commons, who were restrained by the canon law from loaning their money upon interest, or who were averse to engaging openly in commerce.  Capital, struck with sterility by the prohibitions of the church, found in this association an outlet lawful and profitable." (*Troplong*, 383.)

This author has reviewed the changes which were effected in France upon the Italian theory of such a partnership, by the

ordinance of Louis XIV, and mercantile usage. The code of commerce so far recognized these modifications as to require a partnership title (*un nom societe*) to be taken, and a registration of the sums contributed to be made, although the names need not be disclosed. (*Troplong, Art.* 402, 406, 408 ; *see also article* 234 *as to the contents of the registration.*)

The rule of the Roman law was, that an engagement binding heirs to continue a partnership was absolutely void. (*Inst. Justin: De Socio,* § 5.) But this rule was altered, even among those nations with whom the Roman law was the basis of jurisprudence, and is entirely different in France. Such an agreement may legally be made to bind the succession. *Tam hæredibus nostris quam nobisme-tipsis cavemus.* (*Troplong De Societe, Art.* 951, 955, 956.) So fully is this doctrine recognized, that the rule seems to be that it prevails even as to minors; certainly it does so when the partnership is *en commandite.* (*Id.* 954.)

The objection, that the assent of the parties which is necessary to form a partnership ought to be the rule for its continuance, is answered thus—that the former is an act of the will, the latter a charge upon the heritage. The death of the actor, (*Le Gerant,*) indeed, produces a dissolution ; for, in regard to him, the association is formed with respect to the person, and not to the business.

It is, therefore, plain, that the provision in the articles of partnership now in question, is perfectly lawful by the law of the country where the contract was made, and that under it, the widow and heirs continued partners *en commandite.*

One circumstance deserves notice before leaving this part of the case. The French law is extremely rigid as to the effect of an interference (*immixtion*) by a contributor, with the affairs of the company. (*Code Com.* 27 ; *Troplong, Art.* 420, &c.) A question might arise whether the purchase and shipment of goods from France mentioned in the affidavit, was not such an intromission. But the facts are too imperfectly stated to decide this point. The terms and mode of transmission are not

disclosed, and the widow, Madame Jacquin, is alone named as making the shipment.

III. I come, then, to a point strongly pressed by the counsel for the plaintiff, and of no little interest.

It is urged that our statute, authorizing and regulating limited partnerships, has created a system which is not merely permissive, but exclusive. That what it does not explicitly sanction, it forbids. And especially that, if the rule of succession in a limited partnership will involve a principle substantially hostile to a principle of the statute, it cannot be allowed.

The statute (1 *R. S.* 764) in its first section declares, that limited partnerships for the transaction of any mercantile, mechanical, or manufacturing business within this state, may be formed, upon the terms, with the rights and powers, and subject to the conditions and liabilities herein prescribed." By § 4, all the parties are to sign a certificate, which contains, among other things, the names of all the partners, general as well as special, with the amount of capital contributed by the latter.

By § 7, at the time of filing the certificate, an affidavit of one or more of the general partners must be filed, stating the sums specified to have been actually and in good faith paid in cash. No partnership shall be deemed to be formed until the certificate shall have been filed and recorded.

By § 9, the terms of the partnership are to be published for at least six weeks after the registry.

Section 11, provides for a renewal or continuance of such partnership. The certificate and notice are to be made and given as upon the original formation; and every such partnership which shall be otherwise renewed or continued shall be deemed a general partnership.

The 12th section directs, that upon any alteration in the names of the partners, similar formalities are to be gone through as upon the constitution of the partnership.

By the 24th section, no dissolution by the acts of the parties previous to the time specified shall take place, until a notice of such dissolution shall be filed in the clerk's office.

I apprehend that it is not to be questioned, that a limited partnership, formed under the statute, is dissolved by the death of one of the partners, as it is in ordinary cases. That is, so far as the statute regulates the matter, such would be the result.

A striking distinction between the principle of the statute and that of the French law is, that by the former the names of the special partners must appear upon the public record. If the provision in the present case can be carried into effect, the widow and heirs of *Jacquin* retain the privilege of exemption from personal responsibility, while their names are unknown. They reap a share of all future profits, and bear their share of future losses in proportion to the fund they have invested, and yet remain sheltered from individual liability. All this is repugnant to the pervading principles of the statute, of a registry, and a publication, containing the names of all the associates, as well as the sums contributed.

And yet the English law (the strong enemy of limited partnerships) permits an exception to its rigor, when it allows the funds of the deceased to be retained and acted upon, and subjects those funds alone to responsibility for future debts.

The question is one of great interest in a commercial community, and calls for a more ample and deliberate examination than can be given upon an application of this nature. My impressions are, that the statute has prescribed a system which will extend to provisions of this nature. That the parties, designated in articles, or a will, to continue a partnership, or to be interested in it after a death, should be obliged to renew the formalities of the statute, if they would remain special partners, with the fund alone responsible; and if they continue the business without this form, then they become general partners, liable in like manner as all other dormant partners.

It may be noticed, that in the instructive discussion of the subject of partnerships by the French writer I have referred to, he traces the progress of the law as to such an association, from the time when (as an eminent civilian, *Cassaregis*, termed it,) it was not a partnership, but an association in participation, to

the time when it received, in the ordinance of Louis XIV, a fixed character as a proper partnership, down to the time of the Code, when the partnership name, and the registration of the capital of each member, was made essential. At each step greater restrictions and greater publicity has been achieved; and our statute has taken another step in advance, by requiring the names of all the contributors to be publicly disclosed.

The result then is, that there was a general partnership, which the representatives have not chosen to continue as such, and now seek to continue as a limited partnership, without pursuing the regulations of the statute. It follows that a dissolution has taken place by the death of Jacquin.

The survivor has, then, a right to wind up the business, and can only be interfered with on the ground of faithlessness or insolvency. (*Evans* agt. *Evans*, 9 *Paige*, 178.)

Another point has been relied upon by the counsel for the plaintiff. By article 9 of the agreement, each co-partner shall have the right of causing the immediate dissolution of the company to be pronounced, if two successive inventories exhibit loss, or when, at any one time, any inventory shows the loss of ten thousand francs; but he shall have to declare such demand under pain of losing his right thereto, within one month from the definitive conclusion of the inventory that may have supplied the cause of such dissolution.

The inventory produced by the plaintiff, and sworn to by the clerk, makes the loss $3,691.21, over ten thousand francs. The defendant produces an inventory making the loss $1,067.64. The principal difference consists in the sum of $2,510.59, which the defendant treats as cash belonging to the firm. This is no doubt the sum referred to in the affidavit of Buisson, as drawn from the bank by the plaintiff; and I should require some further explanation of this item, if the question of loss to ten thousand francs was essential to the decision of the case. Besides there is great force in the suggestion, that the answer of the widow, and the other heirs in France, was necessary before a dissolution could be pronounced on this ground.

My conclusion is, that the case stands as one of a general

partnership, dissolved by the death of one of the firm. The defendant must, therefore, take one of the propositions offered by the plaintiff, or a receiver must be appointed. It appears to me a very proper case for carrying on the business for the three following months, if that can be done without danger to the rights of either party. (*Madgwick* agt. *Wimble,* 6 *Beavan,* 500.)

Order accordingly.

Since the decision of this motion, I have noticed the case of *Ames* agt. *Deming,* (1 *Bradford Rep.* 321.) The surrogate of New-York, in a very able and learned opinion, has arrived at the conclusion herein stated, that the death of a special partner dissolves the firm, and has gone over much of the interesting ground of the French law which I have explored. I find also, that in Pennsylvania there is an express provision in the statute on the subject, for the continuance of the capital of the special partner through his representatives, for the unexpired term, or a sale of the interest, in their discretion. (*Purdon's Digest Laws Penn.* 544, § 28.