**No. 42.**—The CREDITORS OF JOHN F. SPICER, plaintiffs in error, *vs.* EVELINE SPICER, *et al.* defendants in error.

**No. 43.**—THE CREDITORS OF ANDREW Y. HAMPTON, plaintiffs in error, *vs.* JAMES J. HAMPTON, *et. al.* defendants in error.

A testator, by his will, gives and bequeathes all his estate, both real and personal to his grand children; he directs it to be divided into nine equal shares, that being the number of his family, and divided between them; he desires that the parents of the grand children have the use and management of that portion of the estate given to their children, during the life of the parent, and the emoluments and profits arising therefrom, to be used by the parents for the support, raising and education of his grand children, with the privileges of giving off a portion to the grand children as they might marry or come of age, if the parent saw fit, otherwise to remain together until the death of the parent, and then to be equally divided between the grand children, share and share alike. *Held,*

[1.] That the several families of grand children, while minors, were entitled to a proper allowance from the income of the property for their support, as against the judgment creditors of their parents.

[2.] That property bought with money coming from the estate of the testator, constituted a part of the corpus of the trust estate, and was not liable to the debts of the parents.

In Equity, in Dougherty Superior Court. Decision by Judge POWERS, December Term, 1856.

These two cases involving the same questions, under the same will, were heard together.

Andrew Hampton, of Laurens county, died in the year 18—, leaving the following last will and testament, viz.:

GEORGIA,      ⎫ I, Andrew Hampton, of the county of
LAURENS COUNTY. ⎭ Laurens, and State aforesaid, being in sound mind, but knowing that it is appointed for all men once to die, do make and ordain this my last will and testament; that is to say, my will and desire is, that all my just debts be paid and fully discharged.

*Item* 1*st*. I give and bequeathe all my estate, both real and personal, to my grand children, that I have not heretofore given to my children.

2d. My will and desire further is, that all my estate, both real and personal, be divided into nine equal lots or shares, and my executors shall set apart by lottery one of said lots or shares to each family of my grand children, and in case any one or more of my children die without issue, then and in that case, the portion or share of my estate that would have gone to such issue, shall be equally divided among the remaining families of my grand children, share and share alike.

3d. My will and desire is, further, that the fathers of my grand children, have the use and management of that portion of my estate, that I will and bequeathe to the children, during their natural life time, and the emoluments and profits arising therefrom, to be used by the fathers for the support, raising and educating my grand children, and should any of my grand children marry or become of lawful age, then and in that case, their father or fathers, may give to them a portion or share of their property, if he thinks proper to do so, otherwise it remains together until their father's death, then to be equally divided between such grand children, share and share alike.

4th. And my will and desire further is, that if any one or

more of my daughters be left widows, that they enjoy that portion of my estate that I will to their children in like manner that their husbands would have done in case they had have lived; and my will further is, that if any of my daughters-in-law be left widows, then and in that case, they enjoy that portion of my estate that I will to their children, in like manner as my daughters do, during their widowhood.

5th. Should it so happen, that any one or more of my children should fail to have issue, it shall in no such case be construed, as to prevent such child or children from enjoying and having the use and possession of that part or portion of my estate that would have fell to them, had they have had issue during their life time.

6th. My will and desire further is, that the following exceptions bear in relation to every part of my estate, that is to say, that portion or part of my estate that I bequeathe to my beloved daughters, Rachel and Mary, to be held in trust by my executors, and the said executors to use and control in any manner that they may think most conducive to the interest of the children of the said Rachel and Mary, free from the control of their present husbands or any future husband they may have, until it would have been distributed had this exception not have been made.

7th. My will and desire further is, that should I have any crops growing on my plantations at the time of my death, that my executors proceed to make and gather the same by my hands and overseers, in like manner as I would do, were I living, and that it, together with the balance of my perishable property, be equally divided and disposed of, as I have directed in relation to my real and personal property.

8th. And my desire further is, that no portion of my estate be sold unless it should be necessary for the payment of my just debts.

Lastly: I hereby nominate and constitute and appoint my four sons, Benjamin W. Hampton, John M. Hampton, Andrew J. Hampton, and James D. Hampton, sole executors of

this my last will and testament, hereby ratifying this, and this only, to be my last will and testament.

In testimony whereof, I have hereunto set my hand affixed my seal, this the 21st of August, 1839, A. D., and of the Independence of the United States of America, the sixty-fourth year.

ANDREW HAMPTON, [L. S.]

Signed, sealed and delivered in the presence of

WARREN W. WHITEHEAD,
CHARLES ROACH,
DANIEL ROBERTS,
RUFUS M. DORSY,
RICHARD THOMAS,
JAMES A. THOMAS.

Proven and admitted to Record.
Court of Ordinary, March 2d, 184—.
Georgia, Laurens County.

In pursuance of the directions of this will, the executors divided the estate of the testator into nine equal parts and assigned one portion thereof to each of said families of grand children. The estate thus divided and assigned consisted of negroes, cattle, hogs, horses and mules, notes, money, &c. Andrew Y. Hampton, one of the sons of testator, and John F. Spicer who had inter-married with Eveline Hampton, a daughter, received their respective shares, and had been in the use and enjoyment of the same for many years. In the years 1854 and 1855, they were sued to insolvency. Their judgment creditors levied upon the crops of cotton, corn, fodder, stock and cattle, on the plantations belonging to said Hampton and Spicer; and also upon two negroes, *Van* and *Jack.*

The children of Andrew Y. Hampton and John F. Spicer, filed their respective bills, setting forth the foregoing facts, and that the two negroes levied on had been purchased, and exchanged for funds and property received from the estate of

their grand father.   They prayed for an injunction to restrain the sale of the property under the levies made by the creditors, and for an account of their proportional share of said crops and stock, and to have the same set aside and decreed as part of their estates, not subject to the debts of said Hampton and Spicer.

To these bills, the creditors respectively demurred.   The Court overruled the demurrers, and defendants excepted.

HINES; and LYON, for plaintiffs in error.

SLAUGHTER; and VASON, for defendants in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The Court entertains no doubt but that the respective families of grand children of Andrew Hampton, deceased, are entitled to be supported and educated out of the property left them, up to the time of their marrying or becoming of age; at which time their parents are authorized to give off a portion of the property, if they see fit; otherwise to retain it during their natural lives, to be then divided.   Whether the surplus over and above the expenses of the grand children and after they are married or become of age, up to the time of distribution, was not to accumulate for their benefit, in the hands of their parents, is not so clear.   I have no doubt but that such was the understanding and intention of the testator.

In the case of Spicer's children, they are minors, and consequently may claim a support out of the emoluments of the property in the hands of their father.   In 1856, he worked eleven negroes of his own, and seven of theirs, and a ratable proportion of the money arising from the sale of the crop of that year was $1,400 00.   There are five of these minors who are the complainants in the bill, and some dozen unproductive negroes.   They allege that the whole of this is needed for their maintenance, and that without it they will

be left destitute, and this statement is not contradicted.   We see no error in the decision of the Court, therefore, that the jury might decree them the whole of this fund.   They do not go back upon the crop of 1855, by way of compelling their father to account for the income of past years, but to obtain the means of support for 1856.

[2.] As to the heirs of Andrew Y. Hampton, the main contest there is, as to the two negroes Van and Jack, five mules, a wagon and harness, some stock, provision, &c.   As to the slaves, we think there is a clear equity, according to the case made by the bill.   One of them is alleged to have been bought with the money received by the father of complainants from the estate of their grand father; and the other with the proceeds of the stock which came in the same manner.   There is some doubt as to the mules, wagon, &c. The claim to these is put upon several grounds.   If this property was purchased out of the funds given by the will, and this is one of the charges, or was placed there by the father, in lieu of the same amount of trust property used by him, then it would constitute a part of the corpus of the trust estate.

Counsel for the creditors suggest in argument, that they had no notice of the trust which encumbered this property, and insist that, inasmuch as they may have given credit upon it, it is subject to their judgments.   But this case comes up upon the judgment upon demurrer; and not upon the answer showing this to have been true.   But even if the fact be so, would the equity of the creditors of the father supplant that of the *cestui que trust* ?

Judgment affirmed.