## Case No. 6,713.
### HOSMER v. JEWETT.
[6 Ben. 208.] ¹

District Court, N. D. New York. Oct., 1872.

##### EQUITY PLEADING—RE-INSURANCE—PROPERTY HELD IN TRUST—COSTS.

1. A bill in equity was filed against the assignee in bankruptcy of the B. Insurance Company, alleging that such company had insured the complainant's vessel for $10,000; that the B. Company obtained a re-insurance for $5,000 of the S. Insurance Company; that there was a total loss of the vessel, and a right to recover the whole loss of the B. Company; that the B. Company applied to the S. Company for payment of the $5,000, and, as a condition of receiving it, promised and agreed to and with the S. Company that it had paid, or thereupon immediately would pay the $10,000 to the plaintiff; and thereupon the S. Company, relying on that promise and agreement, paid the $5,000 to the B. Company, in trust to immediately pay the same over to the plaintiff; and the B. Company received the $5,000 from the S. Company, in trust for the plaintiff, and in trust to immediately pay it over to him; and that the B. Company, proposing and intending to pay to the plaintiff the said sum of $5,000 received from the S. Company, caused a letter to be written to him, wherein was inclosed the said sum of $5,000, and delivered the same to their secretary to send to the plaintiff, which the secretary did not do, but delivered the letter and the $5,000 to the defendant, who received it in trust for the plaintiff. The assignee demurred to the bill for want of equity. Held, that a demurrer admits all relevant facts stated in the bill, but does not admit the conclusions of law drawn therefrom, although they are also alleged in the bill.

2. A demurrer to a bill for want of equity cannot be sustained, unless no discovery or proof properly called for by, or founded on, the allegations of the bill, would make the subject-matter of the suit a proper case for equitable interference.

3. Money, delivered to the bankrupt in trust, if ear-marked, or separately kept and retained as trust property to be delivered or paid over in the same bills or coin in which it was received, would not pass under the assignment in bankruptcy, but would be considered as "trust property;" but an amount of money due from the bankrupt, as a trustee, and which could not be distinguished from any other moneys in his possession or under his control, or which was only due from him because he had used trust funds for his own purposes, could not be considered as "property" held by the bankrupt in trust.

4. The plaintiff could only maintain this suit on the ground of an express trust, and not because a trust in his favor had been created by the mere operation of law.

5. The allegations of the bill as to a trust must be held to be allegations of fact, and not of conclusions of law; and, under the allegations of the bill, the plaintiff would be allowed to prove that the $5,000 was paid by the S. Company, and received by the B. Company, under an express trust.

6. The plaintiff would also have the right to prove that the identical money so received by the bankrupt was retained as trust property, separate and distinct from the proper estate of the corporation.

7. The demurrer must, therefore, be overruled, and the defendant must answer, but, as

---

¹ [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

the case was one of serious doubt, without payment of costs.

[This was a bill in equity by John Hosmer against Sherman S. Jewett, assignee in bankruptcy of the Buffalo Fire and Marine Insurance Company.]

HALL, District Judge. This case comes before the court upon a demurrer to the plaintiff's bill, for want of equity. The bill sets forth the making of a policy of insurance by the bankrupt, by which the plaintiff was insured in the sum of $10,000, against certain perils of navigation, upon an undivided half interest in a vessel called the C. H. Hurd, and her subsequent total loss; by which the bankrupt became liable to pay the plaintiff the said sum of $10,000. It also sets forth that after such policy was made, the bankrupt corporation, "in order to indemnify and save itself harmless from the risk it had so taken, and to the end that it might provide greater security for itself and your orator" (the said plaintiff) "in case of the loss of said ship or vessel, the C. H. Hurd, and for its and his indemnity," did apply to the Security Insurance Company of New York for, and did procure from it, a policy by which the last-named company "did insure the said Buffalo Fire and Marine Insurance Company in the sum of $5,000 upon the ship or vessel the C. H. Hurd, whilst said ship or vessel should be upon the waters of lakes Erie, Michigan, St. Clair, or Huron, against and upon the risk and insurance so taken by it, the Buffalo Fire and Marine Insurance Company," * * * "and did promise and agree thereby that, in case said Buffalo Fire and Marine Insurance Company should thereafter lawfully pay, or cause to be paid said sum of $10,000 to" the plaintiff, "for any loss of said ship or vessel so insured" under the first-named policy, the said Security Insurance Company would pay to said Buffalo Fire and Marine Insurance Company the sum of $5,000.

The loss of the vessel, and the furnishing of the proofs of loss, and the other facts necessary to show the liability of the Buffalo Fire and Marine Insurance Company, are then properly stated. The bill then further sets forth, that afterwards the Buffalo Fire and Marine Insurance Company, through its secretary, applied to the Security Insurance Company for the $5,000 so by it insured on said policy of insurance secondly referred to; that said Security Insurance Company demanded, as a condition of the payment of said money, proof that the Buffalo Fire and Marine Insurance Company had paid the plaintiff the said sum of $10,000, for and on account of the loss of the C. H. Hurd; and then states that "thereupon the said Buffalo Fire and Marine Insurance Company through its said secretary, as a condition of receiving said sum of $5,000, did assure, promise, and agree to and

with the said Security Insurance Company, that it then had, or thereupon immediately would pay the said sum of $10,000 unto your orator upon and for said loss; and thereupon the said Security Insurance Company, relying upon the said assurance, promise, and agreement, did pay the said sum of $5,000 to the said Buffalo Fire and Marine Insurance Company, in trust to immediately pay the same over unto your orator; and the said Buffalo Fire and Marine Insurance Company, well knowing that it had not paid the said sum of $10,000, or any part thereof, unto your orator received said sum of $5,000 from said Security Insurance Company, in trust for your orator, and in trust to immediately pay the same over unto him." The bill then further alleges that the Buffalo Fire and Marine Insurance Company, through its proper officer, professing and intending to pay the plaintiff the said sum of $5,000 received from the said Security Insurance Company as aforesaid, did, after the receipt thereof by it, as aforesaid, and on or about the 9th of October, 1871, write, or cause to be written to the plaintiff a letter, directed to him at Detroit, wherein was by it enclosed the said sum of $5,000, and did deliver the same unto its then secretary, with intent that he should send, deliver, and transmit the same to the plaintiff, through the United States mail; which letter, it is alleged, is in the possession or under the control of the defendant; that said secretary did not send, deliver, or transmit said letter, and the said $5,000, to the plaintiff, as he should have done, but afterwards delivered said letter, and said sum of $5,000, to the defendant, as receiver appointed in this proceeding; and that said defendant, as such receiver, and, subsequently, as such assignee in bankruptcy, received the said sum of $5,000, so paid to the bankrupt, in trust for and to the use of the plaintiff, and now holds the same; and that the plaintiff has demanded the said sum of $5,000 from the said defendant. The bill also makes the proper allegations in respect to the proceedings in bankruptcy, and the appointment of the defendant as receiver, and subsequently as assignee therein. The defendant interposed a demurrer to the whole bill for want of equity, and the case has been heard upon the bill and demurrer.

The main difficulty, which has been felt in the disposition of this case, is that of determining what must be deemed admitted by the demurrer. This difficulty results from doubts arising upon the attempted application of the established rules of pleading, rather than from the difficulty of determining what rules are applicable to this case, or the form of language by which such rules have been authoritatively expressed. A demurrer admits all relevant facts that are well pleaded, but denies that upon such facts the plaintiff is entitled to relief (Welf. Eq. Pl. 261; Mitf. Eq. Pl. 211; Story, Eq.

Pl. § 452); but it does not admit the conclusions of law, or supposed legal inferences drawn therefrom, although they are also alleged in the bill (Id. and cases and authorities there cited; Welf. Eq. Pl. 261; Coop. Eq. Pl. 111).

The bill is founded upon the allegations that the bankrupt, in the first instance, and the defendant subsequently, received the sum of $5,000 in trust for the use of, and to be immediately, or within a reasonable time, paid over to the plaintiff; and the 14th section of the bankruptcy act [of 1867 (14 Stat. 522)] expressly provides that "no property held by the bankrupt in trust, shall pass by" the assignment made to the assignee in bankruptcy proceedings. Money delivered to the bankrupt in trust, if earmarked or separately kept and retained as trust property to be delivered or paid over in the same bills or coin in which it was received by the bankrupt, would not pass under such assignment, but would be considered as "trust property;" but an amount of money due from the bankrupt as a trustee, and which could not be distinguished from any other moneys in his possession, or under his control; or which was only due from him because he had used trust funds for his own purposes, or otherwise misapplied them, could not be considered as "property," held by the bankrupt in trust.

All debts and claims, arising out of a misapplication of trust funds, or for a general balance of moneys due upon the accounts of a bankrupt as a trustee, must, therefore, be considered as debts provable against the estate of the bankrupt like any other debt; but such debts, being debts of a fiduciary character, are not discharged or impaired by the discharge in bankruptcy. Section 33, Bankr. Act; In re Janeway [Case No. 7,208]; Ungewitter v. Von Sachs [Id. 14,343].

As a general rule, a demurrer for want of equity cannot be sustained unless the court is satisfied that no discovery or proof properly called for by, or founded upon, the allegations of the bill, can make the subject-matter of the suit a proper case for equitable cognizance. Bleeker v. Bingham, 3 Paige, 246.

Assuming the accuracy of the propositions of law above stated, the allegations and substance of the bill will now be considered. It is not alleged by the bill that the reassurance was obtained by the bankrupt as the agent of, or even by agreement with, the plaintiff; and there is nothing in the bill upon which the allegation of a trust can be sustained, except that which is alleged to have occurred at and after the time the application to the Security Insurance Company, for payment, was made by the bankrupt corporation. Up to that time nothing had occurred giving the plaintiff any right, except the strictly legal right he had against the Buffalo Fire and Marine Insurance Company, under the policy of insurance issued by that company;—a right which was not a subject of

equitable cognizance. Nor would the plaintiff have had a right to sustain his bill, upon any supposed necessary implication of a trust arising upon the facts and circumstances alleged, independent of the allegations which expressly state that the $5,000 was paid by the Security Insurance Company, and received by the bankrupt, in trust for the purposes in the bill alleged. In other words, the plaintiff can only have relief in this suit upon the ground of an express trust, and not because a trust in his favor has been created, or exists, by the mere operation of law.

It was insisted by the counsel for the defendant, that the facts alleged did not furnish either any ground for equitable relief, or for any preference against the assets of the bankrupt; and the plaintiff's counsel very properly conceded that no equitable claim nor preference was created or exists in favor of the plaintiff simply by reason of the reinsurance made by the Security Insurance Company; but he claimed that the bankrupt received the $5,000 in controversy in trust for the plaintiff, as alleged in the bill, and upon the trusts therein stated, and that the plaintiff was, therefore, entitled to the relief sought.

In determining the proper construction of the allegations of the bill in regard to the alleged trust, and in respect to the moneys in controversy having been kept by the bankrupt as trust property, separate and distinct, and distinguishable from the individual moneys or general funds and property of the bankrupt, and especially in respect to the statements that the $5,000 in controversy was paid and received under an express trust, it is proper to consider, to some extent at least, the relations between the said insurance companies, and between the plaintiff and each or both of them, at the time when the bankrupt applied to the Security Insurance Company for payment.

At that time there was no privity between the plaintiff and the Security Insurance Company, and as against the bankrupt he had no claim or demand except the purely legal right which he had under the policy issued to him by the bankrupt. The bankrupt had, in fact, no present right to demand the payment of $5,000 from the Security Insurance Company, because, by the terms of its policy, it was liable to be called upon for such payment only after the bankrupt had paid the plaintiff his loss; and such loss had not been paid. The Security Insurance Company, so far as the bill shows, had no direct pecuniary interest in the payment of the loss to the plaintiff, for although the bankrupt was not entitled to demand the $5,000 until payment to the plaintiff had been made, it is very clear that the payment of $5,000 to the bankrupt, upon and in discharge of its policy, although the payment was not then presently and legally demandable, would fully discharge the liability of the Security Insurance Company, as much as though the bankrupt had

previously paid the plaintiff's loss. Nevertheless, I cannot say that the Security Insurance Company may not have considered that it had a pecuniary interest in securing the payment of the full amount of the plaintiff's loss, either because it hoped thereby to secure from the plaintiff and others the business of insurance which he had, or might control; or to gain business from others upon the increased reputation for liberality and promptness which the public knowledge of the transaction might give it. And it is not impossible that there were other motives for imposing an obligation on, or reposing a trust and confidence in, the bankrupt; and the Security Insurance Company was certainly in a position to prescribe the conditions, upon which it would make the payment before it was legally demandable.

Now, the allegations of the bill, expressly and directly made, are, in substance, that the Security Insurance Company paid and the bankrupt received the $5,000 mentioned in the bill, in trust for the plaintiff and in trust to immediately pay the same to the plaintiff;—an allegation which in substance states such payment and receipt under an express trust. Such would surely be its proper construction and effect were it not accompanied by the allegations of the bill, which give a history of the relations and transactions of the plaintiff and of the insurance companies; and, it is very clear that, under these allegations, the plaintiff would be allowed to prove an express trust to the effect stated in the bill. It is not a mere allegation that the bankrupt held the money in trust for the plaintiff, but that it was paid and received under the trust stated;—a proper form of allegation to show such payment and receipt under an orally expressed trust. I shall therefore hold, though not without some hesitation, that these allegations of a trust are allegations of fact, and not of conclusions of law; and that the demurrer must be overruled unless some other and sufficient objection can be urged against the plaintiff's bill. Assuming, then, the existence of an express trust, the question whether the $5,000 in controversy must, under the allegations of the bill, be deemed "trust property held by the bankrupt," and which did not, therefore, pass to the defendant as assignee, will now be considered. The bill affords no entirely solid and certain ground upon which to determine this question. It does not aver that the $5,000 was received in bank-bills or Treasury notes, or give any other description of the money received; nor does it aver that it was kept by the bankrupt in the same form, or in any special manner as trust property; or that the money, inclosed in the letter referred to, was in fact the same identical money or currency received from the Security Insurance Company; but it does aver in connection with the averment of the payment and receipt of the money, that it was so paid and received in trust to pay (not

to deliver) "the same" over to the plaintiff; that the said sum of $5,000 was inclosed in the letter so written and directed to the plaintiff; that the same was delivered to the secretary of the bankrupt; and it is fairly to be understood from the allegations of the bill that this letter and its contents were afterwards received by the defendant as receiver and as assignee.

Under these allegations the plaintiff would have the right to prove that the same identical money so received by the bankrupt was in fact retained and kept by the bankrupt as trust property, separate and distinct from the proper estate, assets and property of the corporation (Bleeker v. Bingham, ubi supra);[2] and it is therefore held, under the authority of that case, that the demurrer for want of equity should not be allowed on account of the apparent uncertainty of these allegations; such uncertainty arising from their general character and broad scope, which will authorize, as well as require, special and definite proof not in conflict with, but in direct affirmance of, such general allegations.

The demurrer is overruled, but the doubts arising upon the construction of the very general and in some respects vague and uncertain allegations of the bill, are so serious, that I do not feel at liberty to charge the bankrupt's estate with costs as the condition of allowing the defendant to answer. The defendant must put in his answer to the bill within twenty days after the entry of the order herein, or the bill may be taken as confessed.

———

HOSMER (UNITED STATES v.). See Case No. 15,394.

HOSSACK (UNITED STATES v.). See Case No. 15,395.

[2]And see Getty v. Campbell, 2 Rob. (N. Y.) 664.

