ALLEN & FARRAR AND OTIS ALLEN, APPELLANTS, VS. THE FREEDMAN'S SAVINGS AND TRUST COMPANY, RESPONDENT.

1. The Freedman's Savings and Trust Company, Plaintiff, advanced a sum of money upon certain commercial drafts, which were afterwards dishonored. The charter of the Savings and Trust Company does not authorize such use of moneys deposited with it, but requires them to be invested in certain other securities; *Held*, That the plaintiff may recover such moneys in an action for money had and received, irrespective of the drafts.

2. In an action by such corporation to recover money so advanced, the Circuit Court issued an injunction against the defendants, who were partners, to restrain them from disposing of or intermeddling with their property, and appointed a receiver of the partnership effects, including a saw mill, and directed the receiver to continue to operate the mill, on the ground that the money obtained by them from the plaintiff was " trust funds," and that such money had been employed by them as a capital in the prosecution of their business of manufacturing lumber at the mill, and that the partners, and others interested as their creditors, had consented and verbally agreed that plaintiff should be first paid out of the earnings of the mill, which agreement had been violated by them; *Held*, That such " trust funds" having been expended by the defendants in the prosecution of their business and not invested in any existing tangible property, but so expended that such moneys cannot be traced and identified, there is no ground of relief in equity or for the issuing of an injunction or the appointment of a receiver; and the violated agreement that the debt should be first paid out of the earnings of the mill, creates no lien upon the mill, and affords no ground for resorting to such remedies.

Appeal from the Circuit Court of the Fourth Judicial Circuit for Duval county.

Thomas O. Allen and Wm. E. Farrar were partners by the name of Allen & Farrar, engaged in the business of sawing lumber for market at their mill near Jacksonville. In 1871 and 1872, they made drafts upon themselves, payable at Boston, for over twenty thousand dollars, which drafts were cashed by the National Freedman's Savings and Trust

Co., at its branch office in Jacksonville, in the usual course of banking and exchange business. This Savings and Trust Company is a corporation created by act of Congress, having its principal office at Washington. and branches in various States. These drafts not having been paid, the Savings and Trust Company as plaintiff commenced an action to recover the money thus obtained against Allen & Farrar and Otis Allen of Boston. The complaint alleges that Allen & Farrar are the owners of the mill property at Jacksonville, and that in 1870 they mortgaged it to Otis Allen for $15,000, and alleges, upon belief, that this mortgage debt has been paid, but that the record of the mortgage remains uncancelled for fraudulent purposes ; that after the drafts were returned unpaid, the plaintiff, by its agent and cashier, had a conference with all the defendants, in which it was agreed that plaintiff, in consideration of further forbearance, should be paid out of the business and earnings of the mill at least one-half its claim before anything should be paid to Otis Allen upon his mortgage ; that after this agreement, Allen & Farrar agreed in writing with Otis Allen to saw lumber for him at the mill at a stipulated price per thousand feet, Otis Allen furnishing logs, &c., and appointing T. O. Allen, one of the partners, as his agent, and when the cashier ascertained the existence of this contract and inquired of T. O. Allen what it meant, Allen informed him that it was a merely " nominal " matter, and that the agreement with plaintiff would be carried out in good faith and all the earnings of the mill were to be paid to plaintiff. It is alleged that this agreement with Otis Allen was made for the fraudulent purpose of giving a preference to him, and was without consideration ; that all the earnings of the mill, and the lumber shipped, went into the hands of Otis Allen, and that he has thus not only received payment of his just claim, but has a large amount of monies which should be applied to plaintiff's demand, and that yet he pretends that Allen & Farrar's indebtedness to him has largely increased ; that in

1873, T. O. Allen told the cashier that he had some $4,000 to pay him, but that the mill needed repairs, and asked consent that the money might be expended in repairs, which was agreed to, and afterwards it was ascertained that the money so used was claimed to have been advanced by Otis Allen and he had taken another mortgage upon the mill to secure it, which mortgage is charged to be fraudulent; that T. O. Allen is the son of Otis Allen, and that he is about to leave the State and to dispose of the property of the firm.

The complaint prays for an account of the partnership dealings; that Otis Allen disclose the purpose of the agreement between him and Allen & Farrar, the consideration, the amounts received from the mill, the expenditures for repairs and other expenses, and the application of the residue; that a receiver be appointed of the partnership property, with power to operate the mill, &c., as the partners might and ought to have done, and that defendants be enjoined from disposing of the partnership property, collecting debts, &c. The injunction was granted as prayed, and a receiver appointed, who was required to take charge of and operate the mill.

By an amendment to the bill, the insolvency of Allen & Farrar was alleged.

The defendants moved to dissolve or modify the injunction and the order appointing a receiver, which motions were denied.

Afterwards the plaintiff filed an amended complaint, containing substantially the matters already alleged, and further, that the funds obtained from plaintiff by Allen & Farrar were monies belonging to depositors, and were held in trust for depositors and for investment under its charter, all which was known to defendants; that such monies were used by Allen & Farrar in their milling business, and constitute the greater portion of the capital upon which they have carried on business since the fall of 1871, and prays that Allen & Farrar may be treated as trustees to the ex-

tent of the monies received from plaintiff, and that Otis Allen may be dealt with as a trustee to the extent of the monies which went into his hands ; that plaintiff may be decreed to have a lien upon the mill property, and its income and earnings and rents, until the plaintiff's claims be paid ; that Allen & Farrar be ordered to pay such monies into court or to a receiver ; that the injunction be continued, and that the agreement between plaintiff and the defendants, whereby the proceeds and earnings of the mill, and lumber, were to be applied to the payment of the plaintiff, may be enforced.

Whereupon the Judge made an order continuing the injunction and the appointment of the receiver.

The defendants answered severally, T. O. Allen and Farrar admitting the cause of action as to obtaining the money as alleged, and that it is unpaid, and Otis Allen neither admitting nor denying it. They all admit the partnership and the ownership of the mill, the contract to saw lumber for Otis Allen, and that T. O. Allen was the agent of Otis Allen as alleged. T. O. Allen denies the conversation about the $4,000 and the repairs to the mill, and says that they borrowed $4,000 from Otis Allen for the purpose of repairing the mill and gave him a mortgage therefor ; that Allen & Farrar obtained the $20,000 and upwards from the plaintiff, and that the bills were discounted in the ordinary course of business, upon their individual credit and responsibility and the liability of their property for their debts. It is admitted that the money obtained from plaintiff was expended in purchasing logs and operating the mill, but they deny that this money constituted the greater portion of the capital upon which the firm have done business, as alleged by plaintiff. It is admitted that the firm of Allen & Farrar is insolvent. The defendants plead the charter and by-laws of plaintiff and the limitations thereby imposed upon it in the conduct of business, and allege that the plain-

tiff violated its charter and exceeded its powers in its transactions with Allen & Farrar, and that the debt sought to be recovered was created by the act of plaintiff's agent in carrying on unlawfully the business of banking with the funds of depositors in the corporation, and that the plaintiff is not entitled to recover upon said causes of action.

Upon these answers the defendants renewed their motion to dissolve the injunction and to vacate the order appointing a receiver, which motion was denied. At the same time the plaintiff moved for judgment against T. O. Allen and W. E. Farrar for the amount sued for on the grounds that the answers were frivolous, and that the answers admit the amount to be due, which motion was granted by the court, and the receiver was continued until further order. Final judgment for the amount sued for was entered against T. O. Allen and Farrar, from which and from all the orders, rulings and decrees relating to the injunction and receiver, and the striking out of the answers as frivolous, the defendants appealed, and all which are assigned as errors.

*E. M. L'Engle* for Appellants.

I. The 1st to 7th errors assigned relate to the granting of the injunction and receiver, and the approving of the bond and undertaking upon the papers before the court.

These points are thereupon taken:

1st. The case made did not warrant the orders nor the manner in which they were obtained. Ken. on Receivers, 2, 10, 52, 53, 55, 59, 60, 137, 151, 154, 182, 197; 16 Ves., 69, 70; Hem. Rep., 226; Daniell's Ch. Pl. & Pr., chap. xxviii, sec. 1, *passim*; 1 Md. Ch., 70; Code of Proceed. Fla., secs. 168, 192; Rule 48 of Rules of the Circuit Court under the Code; 11 Md., 374.

2d. The plaintiff had no authority to discount notes and bills, and cannot maintain a suit to recover money so invested, and has no legal existence in this State. 2 Cr., 167; 21 How., 443; 13 Pet., 587, 589; 27 Penn., 351; 7 Eng.

L. & Eq. Rep., 505 ; 16 Eng. L. & Eq. Rep., 180 ; 30 Eng. L. & Eq. Rep., 120 ; 4 DeGex, McNaghten & Gordon's Rep., 132 ; Angell & Ames on Cor., sec. 104 ; 13 Pet., 519 ; 1 Black, 297 ; 22 N. Y. Rep., 281, *et seq.* ; 11 Pet. 543 ; 12 La. Ann., 496 ; 21 Penn. State Rep., 9 ; 2 Cow., 678 ; 5 Conn., 560 ; 5 Ib., 574 ; 3 Wend., 482 ; 3 Ib., 573 ; 7 Wend., 31 ; charter of plaintiff, approved March 3d, 1865, and amendment approved May 6, 1870, especially sections 15 and 6 ; By-laws of plaintiff, Nos. 7 and 13 ; Report of the Comptroller of the Currency on the condition of the Freedman's Savings and Trust Co., 1872 ; Angel & Ames on Cor., secs. 256, 271.

3d. But because the transaction of discounting said bills was unlawful, is not cause why the depositors should lose their money. They have a remedy by suit against the trustees of the corporation at the instance of any depositor, and that is their proper remedy. 16 Beavan's R. ; 18 How., 342 ; 1 Shelf. on R.'s, 284-5 ; 1 Cr. & P., 1 ; 2 Mylne & Craig, 621 ; 1 Swanst., 265 ; 1 Ves. & B., 226 ; 3 Wend., 130 ; Redfield on R., 596, 5th ed. ; 10 C. B., 318 ; 14 Vt., 195 ; Law Rep. 6 Eq., 112.

4th. The plaintiff had no authority to become a surety for receiver, and an action could not be maintained against it on the bond. (Authorities cited under point 2.)

5th. The receiver cannot operate the mill without borrowing money, which he has no right to do, and the plaintiff has no authority to furnish or advance money for the purpose.

II. 8th assignment. The plaintiff filed an amended complaint, in which it was endeavored to strengthen the case by treating the transaction with defendants as one of trust, and alleging that the mill property is the fruit of trust funds placed in the hands of the defendants by the plaintiff and which the plaintiff has a right to follow. The position is "too thin" to call for serious discussion. The 16th para-

graph shows the property to be worth more than twice the amount of the receiver's bond.

III. 9th error assigned. Every material averment (except the debt) upon which injunction and receiver were prayed for are positively denied by the answers, and the orders, even if they had been justifiable, should, upon the answers, have been vacated.

IV. 10th error assigned. The answers negative the allegations of fraud and combination between the defendants, and show rights vested in Otis Allen touching the property in the hands of the receiver, with which rights the order of the court interferes and which it absolutely destroys. Now, whatever may be the judgment of the court upon the 2d point of division I. above, in so far as the position relates to the alleged debtors, Allen & Farrar, it cannot be denied that as between the plaintiff and Otis Allen the proposition of law carries added weight, and I submit that it is well ta_ken. I am aware of the decision in 5 Fla., in the case of the Southern Life Ins. & Trust Co. vs. Lanier, but that does not apply to Otis Allen; and while that decision must be considered the law within this State until the propositions are overruled, I contend that the dissenting opinion is the better law and that which prevails elsewhere than in this State.

The remaining questions I shall leave to be discussed by associate counsel in their brief.

*Fleming & Daniel* upon the same side, confining themselves to the consideration of the 10th assignment of error, which was that the court erred in holding the answers frivolous.

What is a frivolous answer?

A frivolous answer denies no material allegation of the complaint and sets up no defence. 8 How., 150; 16 How., 135.

It is an answer, which, if true, does not contain any defence, and the insufficiency of which is so glaring as to appear upon a bare inspection without argument. 6 How., 358; 12 How., 544; 1 Abb., 41; 3 Abb., 3; 5 Abb., 455; 3 Sand., 732; 2 Hilton, 475; 14 Abb., 262.

It is not simply an answer bad upon its face, but one which, in the opinion of the court, has been certainly interposed in bad faith for the mere purpose of delay. 8 How., 150.

It is not the motive with which an answer is put in, or its truth or falsity, that is the test on a motion for judgment on account of its frivolousness. If it is a good defence on its face, the motion must be denied. 5 Abb., 455.

No pleading can be called frivolous which traverses a material allegation in the complaint, or sets up matter which, if true, constitutes a defence to the action. 15 Abb., 346; 4 How., 155; 6 How., 331; 1 Abb., 185; 4 Duer, 630; 14 Barb., 393.

The gist of this action consisted in the allegation by plaintiff against defendants of a fraudulent combination on which was based their prayer for the extraordinary interposition of the court to stop the business of the defendants, Allen & Farrar, and to place their property in the hands of a receiver. All of these facts were denied in the answers of of T. O. Allen and Wm. E. Farrar.

It was argued by plaintiff's counsel that the pleading will be held frivolous when there is a decision in point adverse to its sufficiency, and authorities cited to sustain this position; and hence it was argued that the answers were frivolous because one of the points made in the answers was opposed to the decision cited from 5 Fla., 110. And this argument seemed to have great weight with the court below. But this decision did not go to the whole answer, and it cannot be held that because one of the points made had been decided adversely, the defendants should lose the benefit of all the others not so decided. While, then, we may admit

that if there had been a decision made that just such answers as the defendants were insufficient, then we would agree that the authorities invoked would be pertinent and the argument convincing.

A court will not hold a pleading frivolous and give judgment on it unless it clearly appears to be made for the purpose of delay, or unless the grounds stated in it are clearly untenable. 2 Abb., 414; 12 How., 544; 12 Ib., 563; 6 Ib., 331; 6 Ib., 21; 7 Abb., 447.

We submit to the consideration of the court whether there is anything in the answers adjudged to be frivolous which indicates that they were put in for delay, and whether the points made against the action of the court in appointing the receiver are untenable, or are such as will be sustained by this court.

To authorize a judge at chambers to give judgment on account of the frivolousness of the pleading, it should be so palpably bad as not to require an argument in support of the motion. 1 Abb. Pr., 187; 10 How. Pr., 19; 12 Ib., 544; 6 Ib., 21.

All of the authorities above cited may not be accessible to the court. We cite, to sustain the doctrines of this brief, and refer the court to Voorhees' Annotated Code, 10th Revised Edition, page 362, and notes b. and c. on that page, and page 363, note a. Also to 1 N. Y. Pr., (Tiff & Smith) 45, 7.

*H. Bisbee, Jr.*, for Respondent.

The agreement to pay plaintiff out of the earnings and proceeds of the mill for money belonging to and a part of a trust fund, will be enforced in equity, and creates a lien on the mill property, its rents and profits. 2 Sto. Eq. Jur., secs. 1231, 1244, 1217; 1 Cur. Cir. Ct. Rep., 297; 1 Ves. Ch. Rep., 477; 3 Paige Ch. Rep., 376, at large; 18 N. Y., 448, 482, 453; 2 Sto. C. C. R., 335; 3 Ib., 182, 285, 286, 290, 289.

Such an agreement was an appropriation or assignment of the earnings of the mill, which will be enforced in equity, and may be by act as well as writing. 2 Sto. Eq. Jur., 1047; 2 Ib., 1040, note 8.

Expected profits are subjects of a contract to be enforced in equity. 2 Sto. Eq. Jur., 1040.

The defendants are subject to be treated as trustees and to be peremptorily ordered to pay the money sued for into court. Code of Pro., 59; 2 Sto. Eq. Jur., sec. 1252.

Defendants are trustees by implication of law. They have received money which they cannot conscientiously withhold. 2 Sto. Eq. Jur., secs. 1255, 1257, 1258.

A court of equity will hold a wrong doer a trustee for the party entitled by way of remedy for the wrong done. 3 How., 333; 2 Ib., 619, 649, 650.

Defendants claim that the contracts under which they received the money were illegal, and that the money cannot be recovered back. The suit was not brought directly on the contracts, to-wit: drafts. They are set forth by way of showing how the money was obtained, and to state the amount thereof. Such contracts are not prohibited by plaintiff's charter, but even though contracts of certain character are prohibited by law and therefore void, the money obtained thereon may be recovered back. Angell & Ames on Cor., sec. 242, citing 22 Pick., 181; 17 Barb., 384; Ib., secs., 260, 263, citing among other cases 9 Mass., 423; 5 Ala., 787; 6 Smede & M., 179; 13 Cow., 249; 5 Fla., 110.

Notice to defendants that these moneys were trust moneys and were so held by plaintiff's agent. The act of Congress creating the plaintiff was a legal notice to all persons that the moneys held by it were trust moneys. Angell & Ames on Cor., 246, sec. 265.

All persons in or out of a State are bound to take notice of public laws limiting the power of corporations. 3 McLean, 102.

RANDALL, C. J., delivered the opinion of the Court..

I. The first question deemed necessary to be disposed of is one raised by the answers of Allen & Farrar, in which they insist that that the plaintiff in advancing money to them in the common course of mercantile business in discounting their drafts, violated its charter and exceeded its powers; unlawfully carrying on the business of banking with the funds of depositors held by it in trust for other purposes specified in its charter, and therefore that the plaintiff has no right of action. This action is brought to recover money so advanced.

Were this a new question here we might deem it proper to enter into some discussion of the principles involved. But this court has long since disposed of it, and we are entirely satisfied with the law as it has been thus settled. By the charter under which the plaintiff exists, it is authorized to receive deposits and hold them in trust for depositors and invest them in bonds and securities of the United States, bearing interest. The corporation is thus by its charter a trustee of all the funds deposited, and the moneys deposited are "trust funds." There is nothing in the charter which declares any other transaction, not expressly authorized, or any other security taken for such moneys loaned or advanced, to be *void*. The courts generally hold that however such a corporation may, by unauthorized transactions, violate the law under which it exists, and thus subject itself to be proceeded against as for a forfeiture of its franchises, it does not lie with one who has thus obtained its funds and impaired the security of depositors and the public to consummate a fraud against them by such a plea. Southern Life Insurance & Trust Co. vs. Lanier, 5 Fla., 110, 164, and cases cited; Utica Ins. Co. vs. Scott, 19 John. R. 6; Munt vs. Stokes, 4 T. R., 561, per Lord Kenyon and Buller, J.; Parker vs. Rochester, 4 Johns. Ch. R., 332: Robinson vs. Bland, 4 Burr, 1077; Angell & Ames on Corp., 242.

Selden, J., in Bissell vs. The Mich. So. and N. Ind. Railroad Co., 22 N. Y., (Court of Appeals,) while holding to the fullest extent that contracts by corporations, which are unauthorized and entirely beyond the powers of corporations, in view of the limitations contained in their charters, are void and will not therefore be enforced, yet holds this language, (p. 305): "It has been repeatedly held by this court, that where corporations by means of contracts or engagements prohibited by law, i. e., which are unauthorized by their charters, have obtained from other persons any money or other thing of value, while the contract itself is void and can never be enforced, the corporation may nevertheless be compelled, in a suit brought in disaffirmance of the contract and founded upon the equities of the case, to restore what it has obtained."

Under this rule, the plaintiff's action in the case at bar may be sustained against Allen & Farrar, as the amended complaint does not claim judgment upon the drafts, but for money had and received irrespective of them.

II. The plaintiff insists that it was entitled to the provisional remedies employed, viz: the aid of an injunction and a receiver to reach the property of the defendants, Allen & Farrar, in which the "trust funds" were supposed to be involved or invested.

The doctrine that trust funds will be followed into whatever property or into whosesover hands they may be traced, for the protection of the *cestui que trust* against fraudulent transactions, and the like, is guarded with extreme jealousy and vigilance by courts of law and equity everywhere, and we would gladly apply the rule to the present case if it were practicable to do so.

In this instance the Freedman's Savings and Trust Company, plaintiff, by its cashier and agent, advanced to Allen & Farrar, a firm engaged in the business of buying logs, sawing timber and lumber for market, and selling, shipping and consigning it in the ordinary course, a large sum of money

belonging to the customers of the Trust Company, upon certain bills and drafts drawn by them upon their house in Boston, Mass., which drafts were not paid. Allen & Farrar owned the mill where lumber was manufactured in this State. The money was used in the purchase of logs, the hire of labor and other expenses of the firm in conducting their business, in the payment of debts incurred in conducting it, and in repairs of their mill, &c. The money was obtained from the plaintiff in the same manner as it might have been obtained from bankers, viz : by the discounting of defendants' drafts, without stipulation as to the manner in which the money should be expended by them. It does not appear that the defendants, Allen & Farrar, had any other connection or relations with the plaintiff except as a borrower for business purposes. The character of their business was known to the agents of the plaintiff. The identity of the money loaned was lost as soon as it was placed with other moneys and used by defendants in their business, and it ceased to be " trust funds," and became the property of the firm.

Where a party purchases *trust property*, knowing it to be such, from the trustee in violation of the objects of the trust, courts of equity will force the trust upon the purchaser and hold the property subject to it in the same manner as the trustee held it. And " wherever the property of a party has been wrongfully misapplied, or a trust fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held in its new form liable to the rights of the original owner, or *cestui que trust.*" " It matters not in the slightest degree into whatever other form different from the original the change may have been made, whether it be that of promissory notes, or of goods, or of stock ; for the product of a substitute for the original thing still follows the nature of the thing itself so long as it can be ascertained to be such. *The right ceases only when the means of ascertainment fail,* which, of course, is the case

when the subject-matter is turned into money and mixed and confounded in a general mass of property of the same description." See Story's Eq. Jur., sections 1,257–8–9, and the English and American cases cited.

In the present case a great difficulty seems to exist in the fact that nothwithstanding Allen & Farrar knew the character of the moneys in the possession of the plaintiff, yet it was practically impossible for the plaintiff to identify it the moment after it went in their possession, and it could not therefore be followed. It was not invested in any particular article or parcel of property, but used and dispersed in such manner, as we have seen, from the nature of their business, that "the means of ascertainment failed" on the instant. The money was obtained in 1871. In 1873, when this suit was commenced, it had clothed and fed a retinue of laborers at the mills and logging camps, and the lumber had gone to the several quarters of the globe. There was nothing left of the "trust" funds. The authorities cited by the plaintiff's counsel, it seems to us, do not bear him out in his propositions. The effort is to establish a lien upon the mill property itself, and upon its earnings, because of the character of the funds loaned, and by reason of the agreement between the parties and other creditors soon after the protest of the drafts. "It was agreed that Allen & Farrar should go on with their business, sell the lumber on hand amounting to nearly two millions of feet, and apply the proceeds to the satisfaction of plaintiff's demands; to which Otis Allen agreed and consented to look to the future for his pay." (This is the allegation of the plaintiff, and though denied or qualified by the defendants, we will treat it as undisputed for the purpose of this case.) "And relying upon this agreement for payment out of the proceeds of sales of lumber on hand, plaintiff forebore legal proceedings, and relied in good faith upon such agreement. And while plaintiff's agent was reposing confidence in defendants and entertaining the hope

of early payment from the proceeds of the lumber, the defendants were practising treachery with consummate skill."

Now, we do not see how this statement of facts, taken in connection with the loan, affords the basis of a lien of any kind upon the mill property. All the parties agreed to repose further confidence in Allen & Farrar, to give time and rely upon their faithful application of the proceeds of the lumber on hand to the payment, first of plaintiff's claim and then of other claims. Whatever grounds their conduct may have afforded for attaching their property in a suit at law, it created no right in the plaintiff to pursue the extraordinary remedies which were invoked. There was no trust or lien created which might be enforced as against the mill or its earnings in equity. The whole was a mere verbal arrangement, which seems to have been disregarded by all except the plaintiff.

Here is no specific lien as for purchase money, nor as for property consigned for a specific purpose, nor as between partners, nor a case of accident, fraud or mistake, to which classes of cases the authorities cited seem to apply.

The Code authorized the appointment of a receiver " before judgment, on the application of either party, when he establishes an apparent right to property which is the subject of the action, and which is in the possession of an adverse party, and the property, or its rents and profits, are in danger of being lost or materially injured or impaired, except in cases where judgment upon failure to answer may be had without application to the court."

Now it seems clear that by the very terms of this section a receiver should not have been appointed in this action. The cause of action was contract for money only, precisely the case to which the exception in the above section applies, for judgment upon the cause of action could, under the Code, have been had without application to the court, upon failure of defendants, Allen & Farrar, to answer.

Nor does the complaint show cause for the injunction. It

was entirely settled before the adoption of the Code that a creditor could not by injunction restrain or interfere with the control of the defendant's property until he had established his claim by judgment and issued execution thereon. The Code changed the rule so as to allow an injunction before obtaining judgment in the cases specified in section 168. It must appear—1, that the plaintiff is entitled to the relief demanded in his complaint and that such relief or some part thereof consists in restraining the commission or continuance of some act, which, during the litigation, would produce injury to the plaintiff; or—2, when it shall appear that the defendant is doing, or threatens, or is about to do, or procuring, or suffering some act to be done in violation of the plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual; and—3, where during the pendency of an action it shall appear by affidavit that the defendant threatens, or is about to remove or dispose of his property with intent to defraud his creditors.

It cannot be insisted that the first or second divisions of the section can be applicable, because the action is for the recovery of money and incidentally seeks the aid of ancillary measures in securing its payment. The third division only can be made available, but the plaintiff has not shown that the facts exist which entitle him to the restraining process. The section does not relate to any act already consummated by the defendant or others, but to threats or acts which may be done. Nor is any ground shown for making Otis Allen a party to this action brought to obtain a judgment against the debtor, he not being a party to the original transaction, nor having made himself liable as a joint debtor or as surety. This is not fatal to the whole action, however, for the court is authorized, either of its own motion, or on the application of parties to amend in that particular by striking out the name of a party. Sec. 123, Code.

One of the errors assigned is that the court held the answer to be frivolous and gave judgment against T. O. Allen

& Farrar for the amount claimed and by them confessed to be due. Treating the action as we do, as a suit for the recovery of money only, and regarding the various other matters contained in the complaint as surplusage, and there being no issue as to the cause of action except the question of *ultra vires*, we cannot say that there was any legitimate issue made by T. O. Allen & Farrar in their answers. They admit the cause of action as stated in the complaint, and we therefore must permit the judgment as against them to stand.

The judgment of this court is that the judgment of the Circuit Court in favor of the Freedman's Savings and Trust Company against Thomas O. Allen and William E. Farrar be affirmed. That the several orders of the Circuit Court awarding injunction and appointing a receiver must be set aside, and the receiver discharged upon rendering a satisfactory account of his doings to the Circuit Court. The Circuit Court will forthwith direct that the mills and other property, which came to and still remain in the possession of the receiver in pursuance of his appointment, be surrendered to them. As to the defendant, Otis Allen, the suit must be dismissed with costs. The appellants must have judgment for the costs of this appeal.

The Clerk of this Court is directed to send without delay, to the Circuit Court for Duval County, a copy of the judgment of this court, together with a copy of this opinion.