Van Hoesen, J.
The trustees, Abraham Gieve and Samuel G. Cutts, have been guilty of flagrant breaches of trust, and consequently must be removed. There is no doubt that both Gieve and Cutts reasoned themselves into the conclusion that it was excusable, if not commendable, to put the trust fund in hazard by using it in the business, which they launched shortly after Mr. Hooley’s death. Where a man fancies he can make large profits to himself by abusing a trust confided to him, he usually has no difficulty in inventing excuses for his wrongful conduct, and not infrequently he deceives himself as to his own integrity. Gieve could not bring himself to surrender the capital which the faithful execution of the trust required him to withdraw from his business. Cutts, who had for twenty years been a book-keeper, saw that he could get into business for himself by using the trust fund as if it were capital contributed by him to the firm of which Gieve invited him to become a member, and his integrity was not proof against the offer of a partnership.
Mr. Hooley made a fatal mistake in choosing for his trustees men who could not execute the trust without serious detriment to their own interests. Gieve could *15 not, in all probability, have continued in business, and Cutts would have lost his situation, if they had carried out the provisions of the will, and withdrawn the capital of Abraham Hooley from the firm of A. Hooley & Co. Disregarding their obvious duty, Grieve and Cutts, on or about January 1, 1874, turned over the stock and business of the firm of A. Hooley & Co. to the new firm which they formed, and which they styled A. Grieve & Co. For that act there can be no palliation or excuse. It was not done with a view to the withdrawal of the interest of Abraham Hooley from the firm of A. Hooley & Co., but with the single design, on the part of Cutts and Grieve, of using the trust fund as their own property. They afterwards converted to their own use the money collected on the policy of life insurance issued upon the life of the testator, and they also used in their own business and for their own advantage a bond and a mortgage which formed part of the trust estate. These acts constitute, as I have said, flagrant breaches of trust, and prove the whole fund to be in danger. The duty of the court is therefore to remove both Grieve and Cutts from the trusteeship created by Abraham Hooley’s will.
The next question which presents itself is as to the extent to which the court ought to go in reclaiming for the cestui que trust the estate which was misappropriated by the trustees. It is conceded on all sides that so much of the trust fund as now remains in its original condition in the hands of the trustees shall be surrendered by them. Little, if any, of the personal property which Abraham Hooley possessed in his lifetime can be traced and identified in the possession of Grieve and Cutts. The bulk of the testator’s personal property consisted of a two-thirds interest in the stock, fixtures and business of the firm of A. Hooley & Co. The defendant Grieve owned the remaining one-third interest in the property of that firm. The partnership *16 was solvent, and had a large surplus over the amount of its debts. The property being owned by the firm, neither partner could claim any article of the stock as exclusively his own. After the death of Hooley, Gieve, as surviving partner, had a right to the exclusive possession of the partnership property till the business of the firm could be wound up, and then he was bound to surrender the share of Abraham Hooley to those whom Hooley had designated and appointed to receive it. Cutts, and Gieve himself were these appointees. Gieve’s duties as trustee. were in conflict with his interest as surviving partner. As trustee he was bound to get as much as he lawfully could for- the trust estate ; as the surviving partner his interest was to give the trust estate as little as possible, and keep all he could for himself. The task was committed to him to select for and deliver to the trustees that portion of the partnership assets to which the estate of Abraham Hooley was entitled. If he had performed his duty no difficulty would have arisen. He chose, however, not to separate his own share from Abraham Hooley’s, but to keep both shares indistinguishably mingled, and to turn over those shares so mingled to the new firm of A. Gieve & Co. He ought not to profit, however, by his neglect of duty, and as between himself and his cestui que trust his obligation must be the same as though he had actually separated the shares, and had afterwards appropriated the distinct and traceable assets set apart for Hooley’s estate. If no other equities intervened, the cestui que trust could claim, out of the assets which he had confused, though some of them might be shown to be his own, an amount equal in value to the portion of the trust fund which he had misapplied. I shall hold, therefore, that the plaintiffs are entitled, as between themselves and the defendants, to demand and receive from the assets of A. Hooley & Co., which were turned over by Gieve to *17 the firm of A. Grieve & Co., a sum equal in value to the share belonging to the estate of Abraham Hooley. If the firm of A. Grieve & Co. have wasted or lost so much of the assets received from the firm of A. Hooley & Co. that the full amount of the share coming to the estate of A. Hooley cannot be made up without encroaching upon the share of .Grieve, Grieve’s share must, as'-far as it can, supply the deficiency. These observations apply only to property which belonged to the firm of A. Hooley & Co. and to property which was purchased with the proceeds of the assets of that firm. The cestui que trust may follow, not only the trust estate, but also other property bought with the proceeds of the trust estate and remaining in the hands of the trustees; but that which is not part of the trust estate nor was purchased with its proceeds cannot be reached except by execution on attachment. A court of chancery cannot, for the purpose of enforcing the equity of the cestui que trust, authorize a receiver to seize and retain property of the trustee not embezzled from the trust estate.
It is therefore necessary that an inquiry should be had, to ascertain what property now in the hands of the receiver belonged to A. Hooley & Co. or was purchased with the proceeds of its assets. If any of the property in the receiver’s possession has not been paid for, it cannot, in my opinion, be reached by the cestui que trust. They are entitled to their own, but not to the property of strangers who have not been paid for their goods. General creditors of the firm of A. Gieve & Co., without an execution or an attachment levied, have not, as against the cestui que trust, any claim upon the property in the hands of the receiver which belonged to A. Hooley & Co., or was purchased with the avails of the assets of that firm.
I am satisfied that Mrs. Lucy Hooley never know *18 ingly sanctioned the misapplication of the trust estate by Grieve and Cutts.
Mackenzie is not a necessary or proper party to this action. He has no interest in the property in litigation, nor has he any rights to protect.
I shall direct that an order of reference be made, referring it to Henry P. Pultzs as referee, to take an account of the moneys now due to the trust fund from the defendants; and also to inquire which of the goods taken by the receiver from the hands of A. Grieve & Co. once belonged to the firm of A. Hooley & Co., or were purchased with the avails of the assets of that firm ; and that said referee report to the court the names of fit and proper persons to be trustees in the place and stead of said Grieve and Cutts.
I also direct that the defendants pay over to the new trustees, when appointed, the amount found by the referee to be owing by the defendants to the plaintiffs, less the amount in the hands of the receiver.
The plaintiffs have leave to apply for a final judgment appointing new trustees, directing the receiver to pay over to them the amount in his hands, less his reasonable fees and the expenses of his receivership and his accounting.
The defendants, Samuel Gr. Cutts and Abraham ■ Grieve, should pay the costs of this action to the plaintiffs.
In conformity with this decision an interlocutory judgment was entered and a reference had. And a motion is now made to confirm the referee’s report and for final judgment.
After the interlocutory judgment had been rendered, an order was made, making one Wardlaw, who had been appointed receiver of the firm of Grieve & Co., a party, for the purpose of being heard on the reference in support of any. claim he might represent - as • such, receiver.
*19 The judgment which appointed Wardlaw receiver was subsequent to the time when the plaintiffs acquired their lien, and it expressly provided that his rights should be in all respects subject to the rights of the receiver in the present action.-
By the interlocutory judgment it was decreed that whatever sum, upon the accounting before the referee, should be found due to the trust estate, created by the last will of Abraham Hooley, deceased, from the defendants, is and should be a lien upon:
I. The assets of the former firm of A. Hooley & Co., composed of the testator and the defendant Grieve.
II. And a lien upon all merchandise and assets of the firm of A. Grieve & Co., composed of the defendants Grieve and Cutts, trustees, and one William Mackenzie, and formed after the death of Hooley. with the assets of the late firm of A. Hooley & Co., and no other capital; which assets of A. Grieve & Co. had been at any time purchased with the proceeds or avails of the assets of the firm of A. Hooley & Co., or of the property of A. Hooley, deceased.
III. And a lien upon all money, bills, notes, book accounts, and credits of the firm of A. Grieve & Co., proceeding from the trust fund.
IY. And a lien upon the interest of Grieve and Cutts, whether joint or separate, in any property mingled by them or either of them with the trust fund, and unified therewith ; and finally, that the sum so found due by the referee is, and should be, a lien upon all moneys in the hands of Eugene T. Lynch, receiver (appointed in this action, on plaintiff’s application, for the purpose of conserving and protecting the trust fund), which moneys were realized by said receiver upon the sale of such merchandise and assets and collected upon said bills, notes, book accounts and credits.
The referee appointed by the interlocutory judg *20 ment to take the account was directed to report which of the goods taken by the receiver fell within the four classes of property above described as subject to the lien of the trust, viz. : which goods once belonged to the firm of A. Hooley & Co., were purchased with the avails of the assets of that firm, and what property of the firm of A. Grieve & Co., and of its members, had been mingled and unified with the trust fund (but the mere proximity of such property to the trust fund on the shelves of the store not to be deemed a mingling or unification of such property with such fund).
The referee reported that all the goods, except a small portion, valued at $275, which passed into the receiver’s hands belonged to the enumerated classes of property subject to the lien of the trust, but he did not distinguish the kind or amount of such class.
J. F. Daly, J.
[After reciting the facts as above.]—The evidence showed that the original trust property, i. <?., two undivided thirds of the assets the former firm of A. Hooley & Co., could not be traced either in specie or as to avails or proceeds, in the stock of A. Grieve & Co., when the receiver took possession, but that the latter firm and its members had so mingled and unified the goods bought by them upon their own credit, and the merchandise bought with the proceeds 'of such goods, with the goods of the old firm of A. Hooley & Co. and merchandise bought with the proceeds of such goods, as to unite the trust fund and the property bought on their own credit indistinguishably.
This finding, that all the property taken by the receiver “ once belonged to the firm of A. Hooley & Co. or was purchased with the avails of the assets of that firm, or belonged to the defendants, and had been by them mingled and unified with the trust fund,” seems to be good under the interlocutory judgment and upon *21 the evidence, and also as warranting final judgment, as prayed for by plaintiffs.
I. The object of the interlocutory decree in requiring a report as to the several enumerated classes within which the property taken by the receiver fell, was not that a separate disposition might be made of each class of property, but to confine the lien of the trust to such classes of property and none other.
When, therefore, the referee finds and reports that the classes of property subject to the lien embrace all the property taken by the receiver, a subdivision into each class is immaterial. All the classes, and therefore all the property, are subject, according to the interlocutory judgment, to the lien of the trust.
II. Upon the evidence, the referee was bound to come to the conclusion he arrived at. The trustees must separate the trust fund and their individual property. The burden is upon the agent to point out which property is his, and which is his principal’s, and so upon the trustees who have mingled their own with the trust fund. The general creditors of the trustees had the same right, and the same burden. The receiver, Mr. Wardlaw, should have pointed out, if he desired to have it done, what goods had been bought on the credit of Grieve & Co. and not with the avails of the assets of Hooley & Co. (Story Eq. Jur. § 468, and cases cited).
III. The plaintiffs being entitled to a lien on all the property that came into the receiver’s hands, and the proceeds of all such property now in his hands being insufficient to satisfy the lien, it follows, under the interlocutory judgment, that the plaintiffs are entitled to final judgment that the whole amount held by the receiver be paid over to the new trustees. It is claimed, however, by defendants, that the rights of general creditors of Grieve & Co., and of Hooley & Co., *22 represented by Wardlaw, receiver, were reserved by the interlocutory judgment and are to be now determined.
As to the claims of general creditors of Gieve & Co., the members of this firm, with the exception of Mackenzie, were the trustees who had mismanaged the trust property, converted it to their own use, and mingled and confused their own property and the remnants and proceeds of the trust estate together. The assets of the firm of Gieve & Co. were the property of the trustees, so mixed with the trust property as to be incapable of distinguishment, and therefore subject to the satisfaction of the trust when so decreed by a court of equity. That the trustees had formed a copartnership between themsélves, and had converted and traded with the trust property, and acquired property of their own, as copartners, cannot alter their responsibility nor shield their property from the claims of the cestuis que trust. That their property was obtained on credit and is unpaid for, affects the right of plaintiffs no more than, if it were the case of an individual trustee who had mingled with the trust fund goods of his own, obtained on credit and unpaid for. The right of the plaintiffs to satisfaction out of the mingled mass of property was prosecuted by appropriate proceedings, the first being the application for the appointment of a receiver, which this court granted in an early stage of this action. The receiver took the whole assets of Gieve & Co. and Hooley & Co., and reduced them to possession long before the commencement of the action in which the receiver, Ward-law (representing creditors of those firms), was appointed. The plaintiffs’ receiver was appointed for the purpose of securing the property and for the protection of the lien which they sought to have enforced. The creditors of Gieve & Co. and Hooley & Co. had no lien whatever, and such as the receiver Wardlaw claims, was subsequent to the plaintiffs’, which was *23 secured by the appointment of receiver Lynch, in this action. The property taken by the latter was wholly free from any lien or right to a lien at the time he took it, except such as the plaintiffs had the right to enforce.
The plaintiffs had the right, and by diligence secured it, and are as much entitled to the fruits of that diligence as an attaching or execution creditor of the firm would have been.
The error of defendant’s counsel, in assuming that the copartnership assets must be distributed by the court ratably among the copartnership creditors arises from his confounding the rule invoked by plaintiffs in this case, "with the rules governing the distribution of estates in cases of bankruptcy or death. The citations on his brief evidence this. While the property of the fraudulent trustee or agent remains in his possession, it is subject to the lien of the trust, with all individual property of his which he has mingled with the trust fund so that the two cannot be distinguished. When, on the other hand, the property so mingled and confused has passed into the hands of an assignee in bankruptcy or an administrator, the statute controls, and all the property which the cestui que trust cannot identify must be distributed as the statute provides. '
In this case the plaintiffs were fortunate enough to secure their lien while the property was in the hands of the trustees.
Mrs. Gieve’s claim as a creditor of Hooley & Co. must be enforced as against the personal representatives of the deceased partner, Hooley, by the appropriate proceedings. By recovering a judgment against the firm in an action brought by her against the surviving partner only, she obtains no lien upon a trust fund created by the will of the deceased partner. Neither the personal representatives of the deceased nor the trustees have had any opportunity to contest *24 her claim, and her judgment was recovered after the receiver was appointed in this action.
The report should be confirmed.
Appeals were taken from both of the foregoing decisions. The appeals were both heard together by the general term of the court of common pleas, and opinions were delivered as follows by Judges Van Brunt and Larremore.
Van Brunt, J.
The single question which I propose very briefly to consider is this: Has the estate of Hooley a lien upon all the assets of Grieve & "Co., to the extent of the value of the property belonging to the estate which was misappropriated and put into that firm by Cieve and Cntts, to the exclusion of the creditors of said last-named firm ?
It is very evident that it is no answer to the assertion of such a lien that, as far as Grieve and Cutís are concerned, the property of the trust estate has become so blended with their own that it cannot be traced, because such blending has arisen from their own fraudulent acts, and if the trust property has been mingled with his own by the trustee, the court will take the whole in order to indemnify the trust estate.
The question has never, as far as I have been able to discover, been considered by the courts of this State, but it has arisen in England, where the assignees of a bankrupt have claimed property used in trade, upon which a lien was claimed by the representatives of a deceased partner.
- In the case of West v. Skip, 1 Ves. Sr. 239, Lord Hardwicke held that the representatives of a deceased partner had a specific lien upon the assets, although the survivor afterwards dies or becomes bankrupt; and said that “ Skip, therefore, is entitled to the same specific lien against the assignees as against Harwood and that, even as to the new stock; for in all those *25 cases of a lien on a partnership it is not considered as appropriated to the stock brought in, but to everything coming in lieu during the continuance or after the determination of the partnership.”
As in Bucknal v. Roiston, Pre. Chan. 285, where a lien was held to be on those goods which were the produce of the original goods. So in Brown v. Heath-cote, Mich. T. 1749, I held that it continued on what was the produce, by way of barter and sale, and that holds much more strongly in the case of a partnership' trade, which cannot otherwise be continued.
Lord Eldon followed the same rule in Exp. Rowlandson, 2 Vesey & B. 172. Whether the lien of an outgoing partner would prevail against creditors, he' said, would depend simply on whether the outgoing partner left the property in the order and disposition of the bankrupt, and he held that the consent of the outgoing partner must clearly appear to have been given before he would be robbed of his lien.
In Viner v. Caddell, 3 Esp. 90, the wife of a bankrupt, as administratrix of her father, had become entitled to his effects, the stock and fixtures of a bakery. She and an infant brother were entitled to the distributive shares. The husband of the administratrix, with her consent, continued the business for their benefit until he failed. Lord Eldon held that, nevertheless, only her one distributive share, and that only because lawfully her husband’s property, would go to his assignee in bankruptcy.
In the case of Stocken v. Dawson, 9 Beav. 239, the principle contended for was distinctly held. That was a case in which a surviving partner had taken possession of a brewery and stock in good faith, under the provision of a will, which provision he thought he had sufficiently complied with; he died, and transmitted the property to his son and executor, who also continued the brewery and became bankrupt. The heirs of the *26 original deceased partner, after the lapse of eleven years, discovered that the provisions of their ancestor’s will as to the transfer had not been properly complied with.
They filed a bill to get out their interest, which was sustained, and it was held that the creditors of the bankrupt were postponed to the heirs. Other people’s property could not be applied to pay the bankrupt’s debts. The same principle was enforced in the case of Flockton v. Bunning, 8 Ch. App. 324, note.
The principles upon which these decisions were founded are clearly these :
1st. That the representatives of a deceased partner have a lien upon the whole of the assets of the firm, subject to the payment of the debts of the firm for the amount which may be found to be the deceased partner’s share of the firm’s assets.
2d. That the surviving partner is entitled to the possession of the whole of the firm’s assets for the purposes of liquidation, and he becomes a trustee for that purpose.
3d. That if the surviving partner continues the business of the firm and uses the assets of the old firm in such continuation, he commits a breach of trust, and misappropriates property upon which a lien has been impressed for the security of the representatives of the deceased partner.
4th. That if by such continuation the surviving partner has disposed of the assets and stock of the old firm and has invested the proceeds thereof in new stock, so that the identity of the old stock and assets are lost, and lias mingled in such new stock property of his own, in such a manner that it cannot be separated, the court will impress the lien of the representatives of the deceased partner upon the whole of the new stock to indemnify the trust fund, except as against a bona fide purchaser or a party having acquired *27 I a specific lien by the levy of an execution or attach- > ment.
5th. That such a lien will be enforced to the exclusion of the individual creditors of the surviving partner,, upon the ground that it would be more inequitable to appropriate any portion of the trust funds to the payment of the individual debts of the surviving partner, than that some portion of his individual property, which he had so mingled with the trust funds that its identity was lost, should be appropriated to the indemnification of the trust fund
The surviving partner could give to the representatives of the deceased partner a mortgage upon, or a bill of sale of the whole of his own estate, to make good the trust fund, to the exclusion of his individual creditors (and this is all the court does in enforcing this implied lien), but the surviving partner could not give a mortgage upon or a bill of sale of any portion of the substituted trust property to secure any of his creditors.
The court marshals the equities, and gives a prior lien to the greatest. In the cases cited, the courts, in deciding them, seem to have considered it to be established, beyond all question, that a lien existed even upon new stock, and devotes attention chiefly to the discussion of other questions.
It seems to me that it would be useless to attempt to discuss at length these propositions, because they of themselves at once suggest to the mind the common and plain, legal and equitable principles upon which they are founded, and a more extended statement ■ would tend rather to obscure than elucidate. •
It follows, therefore, that the estate of Abraham Hooley, deceased, has a first lien upon all the assets of Grieve & Co., which have become so mingled with the assets of the old firm, and the proceeds thereof, as not *28 to be distinguishable therefrom, to an extent necessary to indemnify such estate.
The judgment should be affirmed, with costs.
Larremore, J.
This case comes up for review on two appeals: one from an interlocutory order removing the defendants as trustees, and directing an account of the trust fund ; the other from a final judgment rendered on such accounting in favor of the plaintiffs, for $35,401.38.
Two tribunals, after mature deliberation and in well-considered opinions, have reached the conclusion that as between the cestuis que trust and themselves, the trustees, under the will of Abraham Hooley, Jr., deceased, have diverted and misappropriated the trust fund committed to their management.
If this conclusion be supported by the testimony, their liability is unquestioned. The inventory filed by them with the surrogate of Hudson county, N. J., showed the amount of such trust fund to be $74,337:41. This sum they were directed by the will to withdraw as soon as practicable after the death of their testator, and to invest the same, as by him directed. Disregarding his positive instruction, they formed a new copartnership, of which these trust assets constituted the major part of the capital, carried on the business of the late firm, purchased merchandise which they mingled with the stock on hand, and though there were apparently no profits, each partner drew out moneys of considerable .amount for Ms individual use.
Not only this, but as executors, they collected a life policy of the testator for $4,902.84, and appropriated that sum to the use and benefit of the new firm. The only investment made by them of the trust fund was the sum of $10,000 on a bond, which they subsequently hypothecated to secure a loan of money to themselves. Neither Cutt-s nor Mackenzie furnished *29 any capital; on the contrary, they drew from the firm largely in excess of their stipulated amount. I am of opinion that equitable interference in this case was properly invoked and applied : 1st. Because the trust fund was traced and found; 2d. Because the defendants cannot, by mingling other property with the trust fund, defeat an equitable lien thereon. It is obvious that the defendants were guilty of a breach of trust (Hill on Trustees, 524; Wedderburn v. Wedderburn, 2 Keen, 149 ; Colburn v. Morton, 1 Abb. Ct. App. Dec. 398; Ackerman v. Emott, 4 Barb. 696 ; Craig v. Craig, 3 Barb. Ch. 76; Hooley v. Gieve, Com. Pleas, Gen. Term, May, 1877).
As between the trustees and the infant plaintiff, Mrs. Hooley’s acquiescence and consent would not constitute a defense (Wood v. Wood, 5 Paige, 596).
But the court held that she did not consent, and there is evidence to sustain the finding.
It will not be disputed that in case of a misapplied trust the cestui gue trust may follow and attach the trust fund, except as against a bona fide purchaser or incumbrancer for value (2 Story Eq. Juris. § 1,258 ; Lewin on Trusts, 732; Perry on Trusts, §§ 837, 838 ; Le Breton v. Reiss, 2 Allen, 12 ; Oliver v. Pratt, 3 How. U. S. 333; Day v. Roth, 18 N. Y. 448; Newton v. Porter, 69 Id. 133).
Nor can there be a doubt upon the evidence, as to the mingling of the assets of the old and new firms. The referee in his report excepted what the testimony warranted, and in the absence of any proof of sale, levy by attachment or execution, death or insolvency against or on the part of the trustee, the creditors of the new firm acquired no superior lien to the proceeds of the property, the title to which had previously vested in the receiver appointed in this action (Hart v. Bullsley, 3 Edw. 70; Barlow v. Joeman, 50 Barb. 187; Hart v. *30 Ten Eyck, 2 Johns. Ch. 108 ; Lupton v. White, 15 Ves. 432; Day v. Roth, supra. See also Jewett v. Dunger, New Jersey Ct. of App. MS.).
By the order of March 14, 1877, appointing a receiver in this action, the plaintiffs acquired unequitable lien upon the assets, superior, in point of right and time, to that of any general creditor, or that of Wardlaw, the receiver, by the order of appointment of January 14,1877. It appeared in evidence that the actions in which he was thus appointed were commenced subsequently to March 14, 1877, and after the receiver, under the order of that date, had taken possession of the firm assets. As no new capital up to this time had been paid into the new- firm by either partner, as the old goods were sold and the proceeds used in the purchase of new'goods, or for the benefit of the partnership, the claim of Wardlaw, as receiver, on behalf of a judgment creditor to a prior lien upon the trust fund, is preposterous. As to a breach of trust and misuse of trust funds, the defendants stand confessed, and yet, when that identical fund is traced and discovered, it' is insisted that a prior equity exists in favor of a creditor of the wrong-doer.
The mere statement of the proposition proves its fallacy.
The defendants made no attempt to distinguish the new goods from the old when the receiver took possession of them as mingled. Of their own neglect they cannot now take advantage (Harford v. Lloyd, 20 Beav. 310; 2 Kent Comm. 437; Story Eq. Juris. § 1,261, and cases above cited).
The point that the general creditors of Abraham Grieve & Co. should have been made parties to this action, was not well taken. Their rights were subordinate to any equitable lien upon the specific fund, and were not prejudiced by the proceedings taken to enforce such lien.
*31 Nor was Mackenzie a necessary party to the action. He advanced nothing in capital, was not to share in the losses of the business. He withdrew from the firm in its debt, and it was not shown that he had any interest in the trust fund after his withdrawal.
The exceptions to the rulings are too numerous to particularize.
After examination, I am of the opinion that no error is shown by the record, and that the judgments appealed from should be affirmed, with costs.
An application was subsequently made to the general term to modify this decision by providing that the claim of one Mrs. Elizabeth Grieve should have priority over plaintiffs.
It appeared that Mrs. Grieve was a creditor of the original firm of Hooley & Co., and that she had obtained a judgment against the surviving partner.
Van Brunt, J.
I do not see that any rights that Mrs. Grieve may have, as a creditor of the firm of Hooley & Co., can be adjudicated upon in this action. Mr. Wardlaw, as receiver, is not entitled to the possession of any of the assets of the estate of Abraham Hooley. He would only be entitled to the possession of such property as Grieve and Mackenzie could claim as surviving partners of Hooley & Co., and of such property as the firm of Grieve & Co. could claim. Grieve and Mackenzie didlnot pretend to hold Hooley’s share in the assets of the firm of Hooley & Co., but the same was held by Grieve and Cutts, as trustees, under the will of Hooley.
The affairs of Hooley & Co. had been administered upon by the surviving partners, and the assets divided and set apart to each partner, and at the time of Wardlaw’s appointment there was no assets of Hooley & Co. in the possession of Grieve, Cutts and Mackenzie, or anybody else.
*32 The only way in which Mrs. Grieve, as a creditor of Hooley & Co., could reach the share of the assets which the estate of Hooley & Co. had received, and held, was to proceed against such estate, after having exhausted her remedy against the surviving partners.
The estate of Hooley & Co., in such action, would have the right to contest the liability to Mrs. Gieve and the fact that a judgment had been obtained against the surviving partners would be no bar to such defense. The estate of Hooley & Co. have ther ight to their day in court, in opposition to Mrs. Gieve’s claim, and this they have not yet had.
If Mrs. Gieve had charged the individual estate of Hooley with her debt, then, in this action, there would have been no difficulty in providing for the payment of her claim, but until she establishes her rights as against the estate of Hooley, I do not see that this court can interfere in this action.
It is urged that there is no executor or administrator of Hooley’s estate,.and that the assets have been transferred to the beneficiaries, under the will. Our statutes provide an ample remedy for creditors under such circumstances. Assets can be pursued into the hands of devisees by creditors.
The motion to modify judgment must be denied.
The defendants appealed from the decision of the general term to the court of appeals.
Adam C. Ellis, for defendants, appellants. I. There was a defect of plaintiffs (Story Eq. Jur. § 1526).
II. Mrs. Hooley should also sue as executrix (Hadden v. Lundy, 59 N. Y. 320, affirming 3 Sup'm. Ct. [T. & C.] 777 ; Story Eq. Jur. 1,526 ; 1 Dan. Ch. Pl. & Pr. 251, 292 ; Runney v. Mead, Rep. t. Finch, 303; Griffith v. Bateman, Id. 334; Attorney-General v. Twisden, Id. 336 ; Conway v. Stroud, 2 Friem, 188 ; Smithby v. Stinton, 1 Ves. 31; Paynton v. Houston, 3 Mer. 31; Trustees v. Kellogg, 16 N. Y. 96; reversing *33 18 Barb. 222; Lupton v. Lupton, 2 Johns. Ch. 614; Wilson v. Mallett, 4 Sandf. 112 ; Brooks v. Gibbons, 4 Paige, 374; Brown v. Ricketts, 3 Johns. Ch. 553; Mumford v. Murray, 6 Id. 1).
III. If this action is regarded as one for a final accounting, then Hooley’s creditors, legatees and next of kin must be parties ; if as against Gieve as surviving partner, joint creditors of Hooley & Co. must be called in (1 Dan. Pl. & Pr. c. 5; Schenck v. Ingraham, 5 Hun, 397; Wood v. Brown, 34 N. Y. 337).
IV. The multiform character of Gieve does not effect his representative rights (Story Eq. Jur. § 679 ; Collyer on Part. 641, 642 ; Townsend v. Whitney, 75 N. Y. 425). So far as he acts as an individual his acts are voidable, not void (Bostwick v. Atkins, 3 N. Y. 53; Boerum v. Schenck, 41 Id. 182; Olcott v. Tioga R. R., 27 Id. 546; Jackson v. Van Dalfen, 5 Johns. 48).
V. Mrs. Hooley’s right was as an executrix and to an account (Sage v. Woodin, 66 N. Y. 578 ; Evans v. Evans, 9 Paige, 181; Collyer on Part. 126 ; Cranshaw v. Collins, 15 Ves. 218 ; Sigourney v. Munn, 7 Conn. 11, 324 ; Lawrence v. Trustees, 2 Denio, 590 ; Gerry v. Gerry, 63 N. Y. 253). The decree in such action should be confined to the assets on hand at Hooley’s death, or the proceeds thereof, specifically identified as such (Payne v. Holmby, 25 Beav. 280 ; Nerot v. Burmand, 4 Russ. 261; Collyer on Part. 320 ; Lindley on Part. 703 ; Story on Part. §§ 233, 329, 343, 349 ; Stoughton v. Lynch, 1 Johns. Ch. 466 ; Dyckman v. Valiente, 42 N. Y. 549; Herrick v. Ames, 8 Bosw. 115 ; Washburn v. Goodman, 17 Pick. 519; Lewin on Trusts, 733 ; Warde v. Rusher, 4 Bosw. 537; West v. Skip, 1 Ves. Sr. 239 ; Vyse v. Foster, 4 Eng. R. [Moak's Notes] 904, 916; affirmed, 11 Id. 1). The right of the estate is solely in the residuum (Matter of Smith, McCullogh v. *34 Dashiel, 1 Am. L. C. 576 ; Menagh v. Whitwell, 52 N. Y. 146; Egbert v. Wood, 3 Paige, 517; Wilson v. Robertson, 21 N. Y. 587; Robinson v. Robinson, 1 Lans. 119 ; Grove v. Lawrence, 6 Id. 89 ; Washburn v. Goodman, 17 Pick. 519 ; Kelly v. Scott, 49 N. Y. 595 ; Lawrence v. Trustees, 2 Denio, 590; Collyer on Part. § 576; Blanchard v. Coolidge, 22 Pick. 151; Sage v. Sherman, 2 N. Y. 432; Sage v. Woodin, 66 Id. 78 ; Daby n. Ericsson, 45 Id. 790 ; Walsh v. Adams, 3 Denio, 128 ; Story on Part. § 346; 3 Kent, 63 ; Murray v. Mumford, 6 Cow. 441; Coe v. Whitbeck, 11 Paige, 44).
VI. The rights of creditors are prior to those of plaintiffs (Eighth National Bank v. Fitch, 49 N. Y. 539 ; Phillips v. Wheeler, 67 Id. 104; Johnson v. Snyder, 8 How. Pr. 498 ; Hill on Trustees, 344; Freake v. Cranefeldt, 4 M. & Cr. 499; Evans v. Tweedy, 1 Beav. 55; Benson v. Le Roy, 4 Johns. Ch. 650; 3 Redf. on Wills, 503; Collyer on Part. §§ 583, 584; Williams on Ex. pt. 3, bk. 4, c. 1 ; Id. pt. 5, bk. 2, c. 2; Bale v. Graham, 11 N. Y. 237).
VII. The executors’ assent was necessary before the trustee could acquire title (Hill on Trustees, pt. 2, c. 1, § 2 ; Williams on Ex. pt. 3, bk. 4, c. 4, § 3 ; Leith v. Wells, 48 Barb. 647).
VIII. The estate cannot have both Hooley’s interest as a partner and the price for which it was sold to Gieve & Co. (Story Eq. Jur. § 1075; Murray v. Ballou, 1 Johns. Ch. 581; Steel v. Babcock, 1 Hill, 527 ; Farmers’ Loan & Trust Co. v. Walworth, 1 N. Y. 433 ; Kerr v. Blodgett, 25 How. Pr. 304). If it takes the debt it can have no remedy operating in rem (Gerry v. Gerry, 63 N. Y. 253); if it takes Hooley’s interest, its remedy is an action for an account (Leng v. Majestre, 1 Johns. Ch. 305).
IX. The accounting in New Jersey, prevents the *35 action (Ferris v. Van Vechten, 73 N. Y. 123 ; reversing 9 Hun, 12 ; Story Eq. 1523 ; Wood v. Brown, 34 N. Y. 343; Stiles v. Burch, 5 Paige, 132).
X. The property is not sufficiently identified to allow its being claimed as part of the fund (Hart v.Buckley, 2 Edw. Ch. 70 ; Hill on Trustees, 522-531; Williams on Ex. 400-1101; Ferris v. Van Vechten, 73 N. Y. 113 ; reversing 9 Hun, 12; Barlow v. Yeomans, 50 Barb. 187; Kerr v. Blodgett, 25 How. Pr. 304 ; Hutchinson v. Reed, Hoff. Ch. 336; Lewin on Trusts, 211; Seymour v. Wickoff, 10 N. Y. 223 ; Beach v. Forsyth, 14 Barb. 499 ; Matter of Wells, 3 Redf. Surr. 58 ; Willett v. Stringer, 17 Abb. Pr. 152 ; Kip v. Bank of New York, 10 Johns. 62; Buller v. Sprague, 66 N. Y. 392 ; Sillsbury v. McCoon, 3 Id. 379 ; Parsons on Part. 280, 534; Levy v. Welsh, 2 Edw. Ch. 438 ; Clayton Case, Mer. 572 ; Pennell v. Deffell; 4 De Gex, M. & G. 372; Van Allen v. American National Bank, 52 N. Y. 1).
XI. The lien is no stronger than in cases of death or bankruptcy (Storm v. Waddell, 2 Sandf. Ch. 494; Brown v. Nichols, 42 N. Y. 26; Story Eq. Juris. §§ 1228, 1503, and note ; Collyer on Part. § 440 ; Moses v. Murgatroyd, 1 Johns. Ch. 118 ; White v. Carpenter, 2 Paige, 217-242; Walkins v. Pinkney, 3 Johns. Ch. 533 ; Sterly v. Congress Steam Sugar R., 2 Edw. Ch. 505 ; Bowling Green Savings Bank v. Todd, 32 N. Y. 489 ; affirming 64 Barb. 146 ; Wilkes v. Harper, 1 N. Y. 586; Ocean Bank v. Olcott, 46 Id. 12; Bush v. Lathrop, 22 Id. 547).
XII. Mrs. Cieve’s claim is prior to plaintiffs (Collyer on Part. §§ 580, 581, 582; Sharpe v. Jackson, 2 You. & C. 533 ; McCullogh v. Dashiell, 1 Am. L. C. 561; S. C., 11 Harris & G. 96-107; Pope v. Cole, 55 N. Y. 124; Story on Part. § 362 ; 3 Kent Comm. 63).
XIII. A lien of the character claimed would be void as against creditors, if created by agreement (Mittnacht v. Kelly, 46 How. Pr. 457 ; Yates v. Olmstead, *36 56 N. Y. 632; Edgell v. Hart, 9 Id. 213; Gardner v. McEwen, 19 Id. 123).
XIV. The trustees ought not to be held, as they acted under the advice of Mrs. Hooley’s counsel (Thompson v. Brown, 4 Johns. Ch. 629 ; citing Wilkinson v. Stafford, 1 Ves. Jr. 41; Vey v. Emory, 5 Ves. 144).
XV. Under the will, the relation of debtor and creditor was created (Jacquin v. Buissen, 11 How. Pr. 385 ; Weber v. Defer, 8 How. Pr. 502 ; Thompson v. Brown, 4 Johns. Ch. 627 ; Gram v. Caldwell, 5 Cow. 489 ; Richter v. Poppenhausen, 17 Barb. 312 ; In re Simpson, L. R. 9 Ch. App. 572 ; Re Dixon, 11 Eng. 513 ; Collyer on Part. §§ 601, 602 ; Williams on Ex. 1101; Fuller on Ex. 487; Vyse v. Foster, 4 Eng. 904 ; affirmed 11 Eng. 1).
XVI. The court has no jurisdiction over the defendants in their capacity of executors (Brown v. Brown, 4 Edw. Ch. 343; Campbell v. Tousey, 7 Cow. 67 Wood v. Brown, 34 N. Y. 337).
XVII. Mrs. Hooley is liable (Colt v. Lanier, 9 Cow. 320; Hill on Trustees, 379, 519, 520, 526 ; Williams on Ex. 1258; Lewin on Trusts. 758 ; Story Eq. Jur. 1280, § 1283 ; Jacob v. Lucan, 1 Beav. 436).
XVIII. Hooley & Co. cannot affirm in part and repudiate in part (Hawkins v. Abbleby, 2 Sandf. 421; Smith v. Danvers, 5 Id. 669 ; Averill v. Loucks, 6 Barb. 19 ; Sweet v. Bradley, 24 Id. 549 ; Bennett v. Judson, 21 N. Y. 238 ; Elwell v. Chamberlain, 31 Id. 611; Henry v. Root, 33 Id. 526 ; Smith v. Tracey, 36 Id. 79).
XIX. Wardlaw’s rights (1 Hoff. Ch. 524; Van Alstyne v. Cook, 25 N. Y. 494; Clarkson v. De Peyster, 1 Hopk. 505; Dan. Ch. Pl. & Pr. 19, 38; Lagton v. Higgs, 5 Sur. 229; Freeman v. Farlie, 3 Mer. 24 ; Reed v. Harris, 7 Sim. 629 ; Davis v. Duke of Marlborough, 2 Swanst. 141; Sharp v. Carter, 3 Peere Wms. 379 ; Boehm v. Wood. T. & R. 345 ; Porter v. Williams, *37 9 N. Y. 142 ; Gillett v. Moody, 3 Id. 479 ; Curtiss v. Leavitt, 15 Id. 121; Hubbard v. Guild, 2 Duer, 687 ; Tinkham v. Borst, 31 Barb. 407 ; Hill on Trustees, 511).
Stephen H. Olin (Olin, Bines & Montgomery), for plaintiffs, respondents.—I. The defendants, as trustees, committed breaches of trust, and should be removed (Ackerman v. Emott, 4 Barb. 626 ; Colburn v. Morton, 1 Abb. Ct. App. Dec. 378 ; Hill on Trustees, 524; Attorney- General v. Mayor of Coventry, 7 Bro. P. C. 235 ; Attorney-General v. Shore, 7 Smi. 309 ; Attorney-General v. Drummond, 1 Dr. & W. 353 ; Exp. Greenhouse, 1 Mad. 92; Matter of Mechanics’ Bank, 2 Barb. 446; Wedderburn v. Wedderburn, 2 Keen, 722, 749 ; S. C., Mylne & Craig, 41-52 ; Craig v. Craig. 3 Barb. Ch. 76 ; Deen v. Cozzens, 7 Robt. 178; Matter of Wadsworth, 2 Barb. Ch. 381; Quackenbes v. South-wick, 41 N. Y. 117).
II. This is the proper action and brought by the proper parties (Hill on Trustees, 194, 195 ; Millard v. Eyre, 2 Ves. Jr. 94; Bainbridge v. Blair, 6 Beav. 495; Wardle v. Hargrave, 11 L. J. N. S. Ch. 126 ; Cooper v. Day, 1 Rich. Eq. 24; Hamlie v. Gibson, 16 Hun, 158.
III. There was no waiver by Mrs. Hooley (Wedderburn v. Wedderburn, 2 Keen, 722 ; Exp. Watson, 2 Ves. & B. 414), and if there was it could not affect the infants’ rights (Wood v. Wood, 5 Paige, 596).
IV. When a trustee has misapplied a trust fund, the cestui que trust may follow the fund, whenever it may be traced, in whatever form it be found, and into „ the hands of any person except a bona fide purchaser or incumbrancer for value (Newton v. Porter, 69 N. Y. 133, 137-140; Lewin on Trusts, 6 ed. 732; Perry on Trusts, §§ 837, 838 ; Felton v. Long, 8 Ired. Eq. 224 ; Butler v. Hicks, 19 Miss. 78; Oliver v. Piatt, 3 How. U. S. 333 ; Martin v. Geer, 1 Ga. Dec. 109; Day *38 v. Roth, 18 N. Y. 448 ; Piatt v. Oliver, 3 McLean, 27; MacGregor v. MacGregor, 9 Iowa, 65; Moffatt v. McDonald, 11 Humph. [Tenn.] 457; Taylor v. Plummer, 3 M. & Sel. 562 ; 2 Story Eq. § 1,258 ; Le Breton v. Peirce, 2 Allen [Mass.] 12; Creditors of Spencer v. Spencer, 21 Ga. 200; Scott v. Surman, Willis, 400; Whitcomb v. Jacob, Salk. 160; Lane v. Dighton, Ambler, 409).
Y. If the trustee has mingled the trust fund with property of his own, the cestui que trust can take the resulting fund, or at least an amount thereof equal to the trust fund. This right may be lost, not only by conveyance to bona fide purchasers for value, but by levy of attachment.or execution by the creditors of the trustees, or by the death or insolvency of the trustee, in which cases the mingled mass is usually distributed according to the laws relating to the estates of decedents and bankrupts (Norris’s Appeal, 71 Penn. St. 106 ; Day v. Roth, 18 N. Y. 448 ; Cooke v. Addison, 1 Eq. 467; Lupton v. White, 15 Ves. 432; Pinkett v. Wright, 2 Hare, 120 ; Hart v. Bulkley, 2 Edw. 70; Barlow v. Yeomans, 50 Barb. 187; Lathrop v. Bampton, 31 Cal. 17; Docher v. Somes, 2 Mylne & K. 674 ; Hart v. Ten Eyck, 2 Johns. Ch. 108; Goldsmith v. Stetson, 30 Ala. 164, 167 ; Willett v. Stringer, 17 Abb. Pr. 152 ; Exp. Watson, 2 Ves. & B. 414; Kip v. Bank of New York, 10 Johns. 62 ; Thompson’s Appeal, 22 Penn. St. 16 ; Middleton v. Pollock, 35 Law Times Rep. [ U. S.] 608; The Idaho, 93 U. S. [3 Otto] 375 586 ; Jewett v. Dringer, N. J. Ct. of App. 1878).
YI. The plaintiff’s lien was prior to that of the individual creditors of the trustees (West v. Skip, 1 Ves. Jr. 239; Exp. Rowlandson, 2 Ves. & B. 172 ; Viner v. Caddell, 3 Esp. 90 ; Stockton v. Dawson, 9 Beav. 239 ; Flockton v. Bunning, 8 Ch. App. 324, note).
VII. The burden of distinguishing the new goods *39 from the old was upon the defendants (2 Kent Comm. 437; Story Eq. Jur. § 1, 261 a; Harford v. Lloyd, 20 Beav. 310 ; Story Eq. Jur. § 468, citing Lupton v. White, 15 Ves. 436, 440 ; Panton v. Panton, cited 15 Id. 440 ; Chedworth v. Edwards, 8 Id. 46 ; Hart v. Ten Eyck, 2 Johns. Ch. 108 ; The Idaho, 93 U. S. [3 Otto] 573).
VIII. The creditors of Gieve & Co. were not proper parties.
IX. The creditors of Hooley & Co. were not proper parties to this action. The only unsettled claims were disputed.
X. The settlement of the firm affiairs was binding on Mrs. Gieve (Sage v. Woodin, 66 N. Y. 578).
XI. Mackenzie was not a necessary or proper party to the action (Menagh v. Whitwell, 52 N. Y. 161; Dimon v. Hazard, 32 Id. 65 ; Phillips v. Clark, 48 Id. 677 ; McGregor v. Ellis, 2 Disney [Ohio] 286 ; Gidding v. Palmer, 107 Mass. 267 ; People v. Gill, 3 Neb. 26 ; Hooker v. Martin, 10 Hun, 302 ; Hutchinson v. Smith, 7 Paige, 26).
Danforth, J.
This action was commenced against Abraham Gieve and Samuel G. Cutts, individually and as trustees under the last will of Abraham Hooley, deceased, to procure (1) an account of the trust property and effects received by the defendants ; and, (2) to remove the defendants from their office as trustees. They answered separately, each denying any violation of duty as trustee, and setting up defect of parties, in that, 1st, one McKenzie was not brought in as defendant, and, 2d, that all the .creditors of Abraham Gieve & Co., were not included among the persons for whom and on whose behalf the action was brought. The trial of the issues so made, resulted in a judgment (1) removing the trustees, (2) directing an account, (3) giving judgment against the defendants for such deficiency as should remain after applying on the amount found due, the property *40 already subject to the plaintiff’s lien, and (4) deciding that McKenzie was not a necessary or proper party to the action and had no rights in the property in litigation or other rights to protect. It-was also held that the general creditors of Abraham Grieve & Co. were neither necessary or proper parties to the action. The correctness of these conclusions was brought up by proper exceptions, and the questions thus raised have been discussed, with so great fullness and detail by the learned judges of the court below, both at general and special term, as renders it unneessary to do more upon this appeal than to state our concurrence in the judgment which has been rendered.
The evidence relating to the breach of trust was convincing. That it had occurred was proven beyond any doubt, and from that, the removal of the trustees would necessarily follow. The objections urged in various forms to defect of parties, would, if sustained, only serve to delay justice. They are only formal. That all necessary parties were before the court, for a proper determination of the issues, that the trustees were properly removed, and justly required to account and then transfer to their successors the trust estate, so far as it still remained in their hands, and from their own property make up the deficiency, we have no doubt; and the reasons, assigned for those conclusions by the learned court whose opinions have been referred to, are satisfactory to us.
Nor are there any merits in Wardlaw’s appeal. This action was commenced on March 1, 1877, to enforce rights theretofore existing. By it the plaintiffs had acquired priority, and for their protection, on the 14th day of that month, upon proper proceedings in this action, Lynch was appointed receiver of the trust estate referred to in the complaint, and of all the partnership estate and effects of Abraham Grieve & Co. Wardlaw was appointed receiver in a creditor’s action in favor of *41 one Ross, against Grieve & Co., and the judgment which defines his rights, also prescribes their limitation. It is not only declared, that his lien took effect on November 26, 1877—a time subsequent to the acquisition of a lien by the plaintiff—but expressly provides that it is subject iu all respects to the rights of Lynch, the receiver in this action. He therefore acquired no lien on the property of which Lynch was the custodian or to which he was entitled. Moreover, he was permitted to appear upon the accounting, and did so, and upon that proceeding, it was established that his lien, to the amount of $273, extended to so much of the funds in the hands of Lynch as was not subject to the right or lien of the plaintiffs ; and that sum was directed to be paid to him. Upon the facts as proven he was entitled to no more, for beyond this the creditors whom he represented could not go.
The judgment should be affirmed.
All the judges concurred.
Judgment affirmed.
NOTE ON COMMINGLING PROCEEDS.
The old aphorism that “Money has no ear-mark,” which was formerly often assigned as a reason for not following a fund after it had been reduced to money and mingled with other moneys, is now restrained by the growing recognition of two just and practicable rules of modern equity, which maybe stated thus: 1. Where trust moneys have lost their individuality by being commingled with other moneys, or turned into other property, equity may establish a charge on the entire fund, in favor of the cestui que trust, to the extent to which that can be done without injustice to those having other equities in the fund., 2. In doing this it may trace the moneys by all the means that book-keeping and an equitable application of payments afiord, so as to fasten on the resulting fund a charge or lien for the amount diverted, so far as the fund can justly be subjected to the trust, but no further.
If the trust money is thus traceable,, the court will not decline to reach it merely because it has been commingled ; nor will they, on the other hand, give the whole of the resulting fund to the cestui que trust, *42 (except, in case of express trusts, as against the defaulting trustee and his personal creditors without lien) but only that portion which may equitably be adjudged to be the proceeds of the trust fund.
The following recent cases illustrate the subject, and manifest-something of the difference of yiew that still prevails.
The most instructive is that of Knatchbull v. Hallett, L. R. 13 Chan. Div. 696,—which arose on conflicting claims to money in bankers’ hands. The action was by a general creditor, for administration. The facts briefly wore these : A solicitor invested his client’s money in Russhuvbonds, and gave her a receipt -for- them, he keeping them in his custody. Their amount was £2,442. He, at that time, and subsequently, owned Russian boitds himself. She subsequently deposited with him £450 more Russian bonds. Subsequently, on the 3d-of November, he, through his bankers, sold £450 Russian bonds, and the amount produced was entered in the bankers’ book as product of sale of £450 Russian bonds. On November 14 he sold £2,242 Russian bonds, together with another bond. The entry in the bankers’ book kept the amounts separate, entering the one as the product of £2,242 Russian bonds. Subsequently the solicitor died, but, before his death, he had deposited in the same account various sums of money, and bad drawn out various other sums.
Fry, J., held that the solicitor had no authority to sell the bonds, and that, therefore, he had no authority to mix the money with his-own; and that this fact distinguished the case from Exp. Dale (l. R. 11 Ch. D. 772), where it was decided that if a factor converted goods into money, and the money got mixed with his own, in accordance with the intention of the parties, the money could not be followed. The judge, therefore, thought that plaintiff was entitled to the same relief as if the. solicitor had been a strict trustee, and to follow the balance at the bankers’. Held, also, on the authority of Clayton’s case (1 Mer. 572), and Pennell v. Deffell (below cited), that the money drawn out by the solicitor must be considered as drawn from the fund the plaintiff seeks to reach, rather than from subsequent deposits of his own money.
The Court of Appeal, on appeal from this decision, held that:
If a person holding property in a fiduciary capacity, although not asa trustee, whether rightfully or wrongfully converts the same into money, and deposits it in his account at his banker’s, the person' for whom he holds can follow it, and has a lien on the balance in the banker’s hands. It makes no difference in regard to following money whether it is held by a trustee or by an agent or bailee (the case of Exp. Dale, L. R. 11 Chan. D. 772, to the contrary, overruled), but where any person holding money in a fiduciary relation, mixes it with *43 his own, the person for whom he holds it has a charge upon the mixed fund. The old authorities holding that money cannot be followed in equity said to be no longer good law.
Where a man does an act which may be rightfully performed, he cannot say that it was done wrongfully. Thus, where a trustee has deposited trust moneys, together with his own, in a bank, and has subsequently drawn out money, the money drawn out may be deemed to have been his own money and not the trust money, for the purpose of fixing a lien or charge upon the balance (Clayton’s case, 1 Mer. 572, limited; Pennell v. Deffel, 4 D. M. & G. 372, criticised). Knatchbull v. Hallett, L. R. 13 Ch. D. 696.
Thesigeb, L. J., said (p. 733): “Wherever a specific chattel is-intrusted by one man to another, either for the purpose of safe custody or for the purpose of being disposed of for the benefit of the person intrusting the chattel, then either the chattel itself, or the money constituting the proceeds of that chattel—whether the chattel has been rightfully or wrongfully disposed of—may be followed at any time, although either the chattel itself, or the money constituting the proceeds of that chattel, may have been mixed and confounded in a mass of the like material.”
In Sadler’s Appeal (87 Penn. St. 154), it was held that if property in its original state and form is covered with a trust in favor of the principal, no change in that state and form can divest it of such trust, or give the agent or trustee converting it, or those who represent him in right—not being bona fide purchasers for a valuable consideration without notice—any more available claim in respect to it than they respectively had before such change; and, in accordance with this principle, equity will follow a trust fund through every transmutation for the benefit of the cestui que trust.
In Morrison v. Kinstra (55 Miss. 71), it was held that a trust fund; into whatever character of property converted, is still impressed with the trust; mixture with the trustee’s private property does not prevent its being separated and dealt with as trust estate.
In Falkland v. St. Nicholas National Bank (N. Y. Ct. App., Mar., 1881, on appeal from 21 Hyun, 450), it was held that the rule that when moneys held in trust have been mingled wfith other moneys of the trustee, so as to be indistinguishable, the cestui que t/rust cannot claim a specific lien upon the property or funds, [Ferris v. Van Vechten, 73 N. Y. 113] has no application when the money is held in trust to pay certain creditors; and cannot be invoked to uphold the defendant’s claim to moneys which have -never lost their original character, and have never been mingled with the moneys of the re *44 cipient, but, on.the contrary, were especially deposited and set apart in the name of a third person for a specific purpose.
In Ferris v. Van Vechten (73 N. Y. 113), it was held that no presumption arises from a trustee’s payment, alone, for lands purchased, that it was made with the trust funds in his possession. In order to impress the lands with the trust, at least as against innocent third persons, the money must be distinctly traced and proved to have been invested in the lands. The cestui cannot claim a specific lien, if the money has been indistinguishably mingled with other moneys of the •trustee, in investments made generally.
In Allen v. Freedman’s Savings and Trust Co. (14 Flor. 418), it appeared that the Trust Company had lent money on personal securities in violation of law, and the borrowers had promised to repay the fund out of the business and earnings of their mill. Held, that this did not entitle the Trust Company to an account of the business and a lien on its proceeds, because, to warrant a court of equity in granting an injunction and receiver in a suit for maladministration of trust funds, there must be proof that the funds have been invested in some tangible property, on which complainant can equitably claim a lien. If moneys have been so expended that they cannot be traced or identified, there is no opportunity for these remedies to attach.
Compare Ogden v. Wood (51 How. Pr. 375),—which was a creditor’s action to reach money paid away by a debtor in fraud of creditors. The complaint demanded judgment that the defendant be directed to account for the money, and that he pay it into court or to a receiver. Various sums of money (bank bills) were shown to have been paid to the defendant, and it was contended that it was the legal presumption that they remained unchanged in the defendant’s hands. Held, however, that as it would be extraordinary for the money to remain unused, the burden of proof is on the party asserting that it has retained its form, or that its proceeds can be traced. While in creditors’ suits money, or anything into which it has been turned, or in which it has been invested, which can be traced or treated in equity as if it were the money itself, can be used to satisfy the judgment, there must be something so specific, that as to it, either in law or in equity, the plaintifi’s judgment or execution, or the filing of the bill or the appointment of a receiver, will create a lien or make a title. Held, therefore, that the action could not be maintained, and that the plaintiff must rest for his remedy upon an action in tort. Ogden v. Wood, 51 How. Pr. 375.
See also Cook v. Tullis (18 Wall. 332).
As to tracing funds through bank account to impress them with a trust, see also People v. Merchants’, &c. Bank of Troy, 78 N. Y. 269; Stephensv. Board of Education, 79 Id. 183.
*45 In Bazemore v. Davis (55 Geo. 504), on a bill in equity to. enjoin action by eestui que trust against a purchaser from a trustee, it was held that where property is held in trust to the use and support, benefit and behoof, of a woman during her life, and to the maintenance and support of such children as she may bear, “and which shall form and remain to be her separate property and estate during her natural life, and then to such children as she may bear,” the surplus income realized in her lifetime over and above support for all the beneficiaries, belongs to her; and, if mixed by the trustee with the proceeds of some of the corpus of the trust estate, and invested in lands, he taking title to himself, in trust for the woman and her only child, she will be the equitable owner, in fee, of such proportion of the land as the amount of income so invested bears to the whole investment.
S. P., Frausler v. Jones, 7 Ind. 277.
In Hosmer v. Jewett (6 Ben. 208), the bill alleged the issuing of an insurance policy by the company for which the defendant was assignee in-bankruptcy'; and its having reinsured the risk in another company for $5,000; and that, upon a loss occurring, the latter company-paid the $5,000 to the former company, in trust, that it should be paid to plaintiff. It also alleged that the said sum of $5,000 was inclosed in a letter and directed to plaintiff, with intent that it should be sent to him, but that it came into defendant’s possession. Held, that as it would be competent to prove under these allegations that the identical money received had been kept separate, the demurrer should be overruled. Hosmer v. Jewett, 6 Ben. 208.
Money, delivered to the bankrupt in trust, if ear-marked or separately kept and retained as trust property, to be delivered or paid over in the same bills or coin in which it was received, would not pass under the assignment in bankruptcy, but would be considered as “ trust property;” but an amount of money due from the bankrupt, as a trustee, and which could not be distinguished from any other moneys in his possession or under his control, or which was only due from him because he had used trust funds for his own purposes, could not be considered as “property” held by the bankrupt in trust. Id.
In Laubach v. Leibert (87 Penn St. 55), (action by assignee of bank, on notes), it appeared that a depositor,, who was liable to the bank on notes held by it, opened an account in his name, with the word “assignee ” attached. He drew checks signed as assignee, and gave them to the bank in part payment of his indebtedness. The bank received them under protest, and sued on the notes for their full amount. Held, that the word ‘‘assignee ” did not ear-mark the fund. The checks were good, and operated as an appropriation of the money towards extinguishing the notes.
*46 ; In Hollembaek v. More (44 N. Y. Super. Ct. [J. & S.] 107), it was held that where funds contributed by one partner to the capital stock of a copartnership, at the time of its formation, are trust funds, but the other partners have no knowledge of that fact, the individual interest of the partner so contributing is alone liable to the céstui que trust, and must be ascertained by an accounting and settlement as between the partners.
In Heath v. Waters (40 Mich. 457), it was held that a surviving partner who is closing up the firm business is bound to pay over to the decedent's estate, as fast as realized, its share of all money not needed to pay debts. In that case a surviving partner, by fraudulent misrepresentations, procured from the decedent’s executrix, who, as he knew, was also trustee for the decedent’s children, a conveyance of partnership interests belonging to the decedent’s estate, for much less than the actual value. Held, that the use of the property thus wrongfully appropriated must be regarded as a continued use of the partnership assets never accounted for, which the survivor might properly be decreed to make good to the administratrix on a bill brought by her for an accounting.
In Re Jordan (2 Fed. Rep. 319),—where an administrator, a member of a partnership, used the funds of the estate in the firm business, and the other partners had notice thereof, —Held, that the firm and its members became jointly and severally liable for such funds. Where in such case the administrator died, and an administratrix de Ionia non was appointed in his place, and the firm of which the former administrator was a member became bankrupt,—Held, that she might prove the claim for such fund against both estates.
For the principles applied where one partner in two firms dies,— see Oliver v. Forrester, Sup'm. Ct., Ill., 10 Cent. L. J. 537.
As to liability of executor for mingling of decedent’s trust funds with funds of estate,—see also Graham v. Van Duzer, 2 Redf. Surr. 322.
As to executors’ and administrators’ rights and liability on continuing business,—see Hannahs v. Hannahs, 68 N. Y. 610.
By the connivance of the sole trustee of a marriage settlement, a solicitor, trust funds were handed over to the husband and invested by him in real estate, which he mortgaged, the trustee acting as solicitor for both mortgagee and husband. The husband and trustee having both become bankrupt, the children entitled under the settlement brought an action seeking to follow the trust funds. Held, that as the mortgagee had no notice of the trust, he was entitled to his security in priority to the eestuis que trust; but that they were entitled to rank in priority to subsequent equitable incumbrancers without notice. Chaplin v. Cave, 49 L. J. Ch. 505.; I 5"Ck.D. A 3) $ .c.
*47 As to the remedy by action for conversion,—see Henderson v. Henderson (58 Ala. 582)—-where it was held that if an administrator commingles funds of an estate with his own, so that the separate identity of the trust fund cannot be traced—as by depositing and keeping such money in bank in his own name, with his own funds—he is accountable to the beneficiaries, at their option, as for a conversion; and this settled rule cannot be disturbed, however oppressive its operation may be in the particular case, or however pure the intention with which such deposit was made.
As to attaching the fund,—see Johnson v. Hersey, 10 Rep. 401— where it was held that if one partner, without the knowledge or consent of his copartner, pays his own note to a private creditor out of the funds of the insolvent firm, such creditor knowing that such payment is a misapplication of the funds of the firm, the funds so received by such creditor will be regarded as held by him in trust for the benefit of the firm, and may be attached in his hands upon a trustee process instituted against the firm by one of its creditors. The court said: “One side of the question is, that the creditors can have no legal remedy because the partnership has none; that one partner has the power to transfer the partnership property without the consent of the copartners; that by his act the title passes out of the firm and vests in the transferee, when no fraud is intended, and can be reached by creditors or partners only in equity; that there can be no legal remedy. The other side of the question is, that the transfer of partnership property by one partner, without the consent of his copartners, to pay a private debt of his own, is a fraud upon his copartners, unless the firm has enough to pay all its debts and liabilities;, that, if the. title in anyway passes to the "transferee, he holds it in trust for the benefit of' the partners arid not for himself; and that partnership creditors can avail themselves of this right of the partnership, in an action at law, by an attachment of the property. We hold this position to be the just and correct one.” Citing Rogers v. Batchelor, 13 Pet. 221; Hoxie v. Carr, 1 Sumn. C. Ct. 181; Kelly v. Greenleaf, 3 Story, 93; Story Partn. § 360; Ex parte Williams, 11 Ves. 5; Doner v. Stauffer, 1 Penn. 198; 3 Kent Com. 65; Menagh v. Whitwell, 52 N. Y. 165; Hacker v. Johnson, 66 Me. 21; Parker v. Wright, Id. 392; 3.Kent Com. 64; Wilson v. Robertson, 21 N. Y. 587; Merrill v. Wilson, 29 Me. 58; Howe v. Lawrence, 9 Cush. 553; Caldwell v. Scott, 54 N. H. 414; Arnold v. Brown, 24 Pick. 89; Locke v. Lewis, 124 Mass. 1; Williams v. Brimhall, 13 Gray, 462; Tay v. Ladd, 15 Id. 296; Commercial Bank v. Wilkins, 9 Me. 28; Yale v. Yale, 13 Conn. 185; Wells v. March, 30 N. Y. 344; French v. Lovejoy, 12 N. H. 458; Homer v. Wood, 11 Cush. 62.
In Sherburne v. Goodwin (44 N. H. 271), it appeared that an exec *48 utor loaned the funds of the estate to a firm of which he was a member, and from time to time to time drew out of the firm moneys which were charged to him in account. On a subsequent settlement with the firm, it was agreed that the moneys so drawn out should be applied to the payment of the loan. Held, that the devisees were bound by this adjustment, although the partners knew that the loan was of trust property, and on the firm books it was credited to the estate.