EFFA BROWN, PLAINTIFF, *v.* ELIZABETH KING AND OTHERS, DEFENDANTS.

*Executors — the executor of a referee, how compelled to pay over money received by his testator as referee — executor not chargeable with costs — effect of parties submitting a matter to the court.*

The judgment in an action of partition directed the referee to pay to a county treasurer one-quarter of the net proceeds of the sale for certain unknown defendants. The referee died without having done so. Parties interested in the proceeds filed a petition in the action to compel the executor of the referee to pay over the moneys.

In the proceedings had thereon there was no evidence given to identify the specific moneys, and it did appear that the referee had stated that he had invested the greater part of the moneys in a private business venture.

*Held,* that the death of the referee threw the liability for the proceeds of sale upon his estate, and put the petitioners in the position of creditors thereof.

That the petitioners should have proceeded against the executor by action, and that there was no warrant for a summary application of this character in the partition suit.

That it was erroneous for the court to direct payment of the claim by the executor, and that it should merely have ordered a recovery, leaving the executor to pay the claim in the ordinary course of administration.

That as no charge of wrong was made against the executor he was not chargeable with costs.

That although the proceeding was irregular, the title of the petitioners to the money doubtful, and the executor not a party to the partition suit, yet as all parties had submitted themselves to the jurisdiction of the court, its order as modified would be allowed to stand.

APPEAL by William H. Clark, as the sole surviving executor of John G. Wilkin, deceased, from an order of the Supreme Court, entered in the office of the clerk of Orange county on the 23d day of September, 1891, directing him to pay to the treasurer of Orange county $2,665.66, and interest, for the use of the heirs of Ann Gaynor, deceased, who were unknown defendants in this action, to be invested by said county treasurer as directed by the decree made in the action on June 7, 1875, with costs to the petitioner John Swezy.

This decree directed the referee in an action for partition to pay to the county treasurer one-quarter of the proceeds of sale for certain unknown defendants.

John Swezy was a defendant in the action, and would have been entitled to a share in the money if no heirs of Ann Gaynor existed.

*William Vanamee*, for the executor of John G. Wilkin, deceased, appellant.

*Daniel Finn*, for John Swezy, petitioner, respondent.

PRATT, J.:

This is an application by parties interested in the proceeds of land sold under judgment in partition in this action to compel the executor of the referee appointed by the judgment to pay over $1,230.15 to the county treasurer as required by the judgment, besides interest. The receipt of this sum by the referee prior to July 1, 1876, has been proven. The final order or judgment requires the payment of $2,665.66 to the county treasurer, besides $245.40 to the petitioners for their costs and disbursements.

Independently of the question of practice, the liability of the

estate of the referee in the hands of his executor seems plainly established by the facts found by the referee and recited in the order. But the question of practice will, I think, be found to depend on the nature of this liability. If the executor had found the specific fund on the death of his testator, or any other fund of which it formed part, so that it could be ear-marked, then it did not pass to him as a part of the decedent's estate at all. In that view it formed a part of a fund in this court which ought to have been in the county treasurer's hands. The executor became its possessor by mere accident, and a trust arose, *ex æquo et bono.* for the benefit of the lawful owners of the money. I am inclined to think that, on this hypothesis, and to this extent at least, it would have been proper practice to have required the executor by summary application in this action to have turned over the money to the county treasurer.

But this is not the case made by the petitioners. It may be that the findings of the referee will bear that construction, but I do not think that view is sustained by the evidence. The petitioners were not content with proving simply the receipt of the money and the failure to pay it over as required by the judgment. If they had stopped there, perhaps they might have justified their practice on the theory that the presumption was that the money remained in the referee's hands at his death as a separate fund, or in some fund which came to the executor's custody. They proved by the referee's son that his father said that he had deposited this money in a saving's bank; and the same line of proof showed that the deposit was made with the approval of the petitioners' counsel. This proof was not controverted. They then proved farther that the referee had declared to his son that he had withdrawn this money to the extent, at least, of $1,000, and invested it in a private business venture. Thus it was an easy matter for the petitioners to have proven that the deposit was not made at all, if that was the fact, and how much, if any, of the fund remained on deposit, if it was true that the deposit was made. At all events it was the duty of the petitioners to have shown by some proof that the executor received this fund so that it could be ear-marked, and a finding that the money had gone into his estate was not enough.

They, by their own proof, created the presumption that the referee had misapplied the fund in his own business, and they then failed to

ear-mark any particular fund. The proof, therefore, as it seems to me, brought the case within the rule stated in *Hooley* v. *Gieve* (9 Abb. N. C., 8) that the death of the referee threw the liability into his estate and remitted the owners thereof to the position simply of creditors, so that it was the duty of the executor to administer it. He was not a simple custodian of money which he did not own, and hence a simple motion to reach this supposed fund was not a proper remedy.

I have thus far spoken only of the original fund of $1,230,15. Undoubtedly, if the petitioners had proceeded against the referee in his lifetime, they could have obtained an order, on a mere motion in the original partition action, to compel the payment of this money to the county treasurer, and the interest as well, by some form of summary proceeding, charging him with annual rests in the computation. That liability for interest comes in place of damages for the failure to perform the duties of the referee's trust, but it by no means follows that the same remedy would apply to this interest by way of damages against the executor of the referee thus in default, especially when it appears that he used the principal fund in his business and its identity was thus lost.

The question then arises, can this order or judgment be sustained as made in a proper proceeding against the executor? His testator died January 19, 1889. He received letters testamentary in March, 1889. This proceeding was commenced December 18, 1890, twenty-one months after the qualification of the executor. It did not appear that any claim had ever been exhibited to the executor against the estate of his decedent, and hence the case cannot be technically classed as a proceeding on the reference of a disputed claim under the statute.

But for all that it was competent for the owners of this fund to commence an action against the executor. So, too, it matters not how the litigants got into court to litigate this matter so long as they got there in some proper proceeding. The court had jurisdiction of the subject-matter, and these parties appear to have subjected themselves to its jurisdiction The question of jurisdiction or regularity seems to have been raised or suggested for the first time on this appeal. I am, therefore, inclined to think that it is too late to raise any question of jurisdiction or regularity.

Coming, then, to the merits, we find proof that the estate of the referee is solvent and able to pay this claim in full. The executor seems to have raised no point before the referee about notice of the claim. The amount directed to be paid is $2,665.66, which is $1,435.51 by way of interest. This sum is clearly within the amount for which the referee would have been liable if he had lived, charging him only with simple interest, but making annual rests in the computation. That rule doubtless applies to his executors. Hence the sum awarded is not beyond, but is within, the liability of the decedent's estate.

But the order or judgment directs payment of this sum, and not simply its recovery, leaving the executor to pay the claim in the ordinary course of administration. I cannot see why this should have been done.

Again, the order or judgment requires payment of costs and disbursements. There was no charge of wrong by the executor, and I cannot see how any case was made for the recovery of costs in any view.

It would, therefore, seem that this final decretal order, whether we call it a final order in a special proceeding or a judgment, must be modified in both these respects; *i. e.,* it must be reduced to a mere recovery, and there should be no costs except after regular application under the appropriate sections of the Code.

We come, then, to the final question, can this proceeding and order be justified on any technical ground? I do not think it can be sustained as a mere order or a mere motion in the old partition action. The executor was not a party, and the whole subject-matter of the inquiry was not appropriate to a simple motion. There are difficulties, also, in the way of treating the application as an action. It is not in any form appropriate to an action. The petitioners are not the owners of the money or claim. The title to it would seem to be in the county treasurer as a trustee for the unknown owners for whose benefit it was to be paid to him. The defendants, doubtless, have an interest in it in default of such unknown owners. But the rule is that, before they can maintain an action for its recovery in their own names, they must show that there has been something equivalent to demand upon, and refusal by, their trustee to sue to enforce their rights.

But the fact still appears that these parties have voluntarily come into this court, taken these proceedings up to the making of this final order, without objection. They have made this record for themselves, and, with the modifications above suggested, substantial justice will be accomplished. If there is any irregularity or informality it is their own fault, and I do not see why the court should do more than simply to make such determination as would have been appropriate in an action or proceeding formally commenced.

The order should be modified, as above stated, and affirmed, without costs.

DYKMAN, J., concurred; BARNARD, P. J., not sitting.

Order modified in accordance with opinion, and as modified affirmed, without costs, order to be settled by Justice PRATT.